## SEBASTIAN BRADT *v.* EPHRAIM BENEDICT.

The statute (2 *R. S.*, 463, § 38) declaring that a corporation which, for one whole year, has remained insolvent or suspended its ordinary business, shall be deemed to have surrendered its franchises, is cumulative, and not a limitation upon the common law rule previously existing in this state.

In order, however, to infer a surrender of corporate franchises from insolvency, suspension of business, &c., for less than a year, the circumstances must be such as to shew that the corporation has lost all power to continue or to resume its business.

Accordingly, *Held*, that a manufacturing corporation which, having become actually insolvent had suspended its business for less than a year under a resolution to wind up its affairs, was not thereby dissolved, the corporation

having buildings, machinery, stock and assets, by which it might have carried on its business.

APPEAL from the Supreme Court. The plaintiff, as owner and holder of a promissory note made by a cotton manufacturing company incorporated under the general act ( *Laws of* 1811, *ch.* 67 ), brought this action against the defendant, as a stockholder at the time of its dissolution, to enforce his individual liability under section seven of said act. The issue was upon the defendant's being a stockholder at the time of dissolution, and it was tried at the Schenectady circuit, before Justice CADY, without a jury. The judge found, as facts, that the defendant was a stockholder up to April 14, 1852, when he sold and transferred his stock to one Henry Fuller, who was at that time the owner and holder of the corporation's promissory note, for which the defendant was sought to be made liable in this action, and which note Fuller transferred to the plaintiff, in June, 1852, before maturity. On the 1st of October, 1851, the corporation was indebted in the sum of $63,362, excluding its capital of $30,000, and including $18,500 of obligations not payable until October, 1867. It had a building and machinery which had cost it $44,697.78, and stock on hand, manufactured and unmanufactured, valued at $31.679.40.

On the 13th November, 1851, a meeting of the stockholders was held, and upon the exhibition of a statement of the financial condition of the company, as above set forth, an entry was made on the book of minutes of the determination of the stockholders to wind up the affairs of the corporation; and after that day no new material was purchased; the operatives were only kept to work up the material on hand, and when that was done they were all discharged. The corporation was, at this time, indebted to the Schenectady Bank in a sum exceeding $14,000, for which judgment was afterwards recovered, and the real estate and machinery were sold, for between $14,000 and $15,000, in July, 1852, upon an execution issued upon that judgment.

Upon these facts the judge held that the corporation was not dissolved, within the meaning of the seventh section of the general manufacturing law of 1811, or of section thirty-eight, " Of proceedings against corporations in equity " (2 *R. S.*, 463), on the 14th of April, 1852, when the defendant sold his stock. Judgment was ordered for the defendant; and was, on appeal, affirmed by the Supreme Court, at general term in the fourth district. The plaintiff appealed to this court, and the cause was submitted on printed arguments.

*B. F. Potter*, for the appellant.

*T. B. Mitchell*, for the respondent.

SELDEN, J. By section thirty-eight of the act in relation to proceedings against corporations in equity (2 *R. S.*, 463) it is provided that, "Whenever any incorporated company shall have remained insolvent for one whole year, or for one year shall have neglected or refused to pay and discharge its notes or other evidences of debt, or for one year shall have suspended the ordinary and lawful business of such corporation, it shall be deemed to have surrendered the rights, privileges and franchises granted by any act of incorporation or acquired under the laws of this state, and shall be adjudged to be dissolved."

The Supreme Court appears to have decided this case mainly upon the ground that this statute was a substitute for and was intended to qualify those rules of the common law under which it has been held that a virtual surrender of the franchises of a corporation may be inferred from its condition and the manner in which it has conducted its affairs. A careful comparison, however, of the provisions of the statute with the previous decisions, will, I think, pretty clearly show, that the statute is to be regarded, not as a substitute for the common law rule referred to, but as cumulative merely.

The first branch of the statute provides that, if a corporation "shall have remained insolvent for one whole year, or for one year shall have neglected or refused to pay or discharge its notes or other evidences of debt," &c., it shall be deemed to have surrendered, &c.  It had never been held, previous to the statute, that the mere insolvency of a corporation, or its refusal to pay its debts, for any length of time, however long, would amount to a surrender.  There was no rule of the common law, therefore, for which this clause of the statute can with any propriety be considered as a substitute; neither does it qualify or limit any preëxisting rule.  It is plainly cumulative, as it adds a rule by which circumstances are made equivalent to a surrender, which before had no such effect.  The limitation which it contains is not upon any common law rule, but upon that which the statute itself introduces.

In regard to the second branch of the section in question, it is equally clear that it is to be construed as a mere addition to the common law.  A series of decisions in this state had established the doctrine that if a corporation suffers acts to be done which destroy the end and object for which it was instituted, it is equivalent to a surrender of its rights. (*Slee* v. *Blōom*, 19 *John.*, 456 ; *Briggs* v. *Penniman*, 8 *Cow.*, 387 ; *Bank of Poughkeepsie* v. *Ibbotson*, 24 *Wend.*, 473.)  The statute goes much farther, and provides that a mere suspension of the ordinary business of the corporation shall operate as a surrender.

It is impossible to consider this provision as intended to limit the rule established by the decisions to which I have referred.  Those decisions lay down a general rule, which embraces a variety of cases ; while the statute is specific in providing only for a single case which does not fall at all within that general rule.  The provision in question, therefore, must be considered as cumulative, and not as controlling or limiting the law as it previously existed.

It does not follow, however, that the judgment of the

Supreme Court was erroneous. That depends upon the question whether the facts bring the case within the judicial rule to which I have adverted. In the case of *Slee* v. *Bloom* (*supra*), all the property of the corporation, both real and personal, had been sold at sheriff's sale. It was under this state of facts that the court laid down the rule that where a corporation permits things to be done which are subversive of the objects for which it was created, it is deemed to have surrendered its charter. But that rule is qualified by another. In *Brinckerhoff* v. *Brown* (7 *John. Ch. R.*, 217), the chancellor says : " It does not follow that a corporation is dissolved by the sale of its visible and tangible property for the payment of debts, and by the temporary suspension of its business, so long as it has the moral and legal capacity to increase its subscriptions, call in more capital and resume its business."

This qualification of the rule is recognised in the case of *Briggs* v. *Penniman* (*supra*) ; but the court there held, that, as in that case each stockholder had paid up his subscription in full, the corporation had no power to call in more capital ; and it not being probable that new subscriptions could be obtained to the stock of an insolvent company, the corporation had no " moral or legal capacity," within the rule in *Brinckerhoff* v. *Brown* " to resume its business."

It appears from these cases, that in order to justify the inference that a corporation has surrendered its franchises, it is not sufficient that it has become utterly insolvent, or even that every vestige of its property has been sold by a sheriff ; but it must also have lost all power to continue or " to resume its business." Can this be asserted of the present corporation, at the time when the defendant sold his stock ? It is true it was insolvent ; but it was still possessed of its real estate and machinery, amounting to over forty thousand dollars. The value of the stock and materials on hand does not appear ; but it is not shown that the amount on hand on the 1st of October, 1851, had been disposed of.

The corporation had then all the appliances necessary to the further prosecution of its business. Whether this would have been done at a profit or loss, is not the question. The resolution of the 13th of November, 1851, is relied upon to show that the company had determined not to proceed with its business. But this clearly is not enough to bring the case within the rule. The resolution was not obligatory. It might have been rescinded at any time by a majority of the stockholders. It cannot be said therefore, that the corporation had not " the moral or legal capacity to resume its business" and as nothing short of this, is equivalent to a surrender, except when the case comes within the provisions of the statute, the corporation was not dissolved until the sale of its effects under the judgment in favor of the Schenectady Bank.

This conclusion renders it unnecessary to consider the other points raised upon the argument.

The judgment should be affirmed.

Pratt, J. The act of 1811, for the organization of manufacturing corporations, provided that, for all the debts of the company at the time of its dissolution, the persons then composing the company should be individually responsible to the extent of their respective shares of stock in said company and no further. (*Laws of* 1811, *ch.* 67, § 7.) The question at the trial was, whether the corporation was legally dissolved on the 14th day of April, 1852, that being the time when the defendant sold his stock. The learned justice before whom the cause was tried without a jury, decided that it had not been dissolved at that time, and I think his decision was clearly right.

At common law, a corporation aggregate might be dissolved within the time limited by the charter: First. By act of parliament; Second. By the loss of all its members, or of an integral part, by death or otherwise; Third. By surrender of its franchises; and, Fourth. By forfeiture of its

charter through negligence or abuse of the privileges conferred by it. (1 *Bl. Com.*, 485 ; *Ang. & Ames on Corp.*, ch. 22, § 1 ; 2 *Kent Com.*, 305.)

As a general rule, to constitute a dissolution of a corporation, by a surrender of its franchises or by misuser or nonuser, the surrender must be accepted by the government, or the default must be judicially ascertained and declared. (6 *Barn. & Cress.*, 703 ; 6 *Cow.*, 26 ; 9 *Cranch*, 51 ; 4 *Wheat.*, 698 ; 13 *Lou.*, 497 ; 4 *Paige*, 481 ; 14 *Pick.*, 63.) But in the case of *Slee* v. *Bloom* (19 *John.*, 456), it was held, in the Court of Errors, that a manufacturing corporation, organized under the act of 1811, might be deemed dissolved, so as to make the stockholders liable for its debts, when it had suffered all its property to be sold and the trustees had actually relinquished their trust, and had for more than a year done nothing manifesting an intention of resuming their corporate functions. The court in that case held that under the circumstances the corporation might be deemed to have surrendered its franchises and to be dissolved in fact. Whether the court did not, by that decision, rather supply what might be deemed a defect in the statute, than announce the law as it was to be found on the books, it is not necessary to inquire. It is enough that it has ever since been adhered to, and must now be deemed a correct construction of the act. (*Penniman* v. *Briggs*, *Hopk.*, 300 ; *S. C. in error*, 8 *Cow.*, 387.) But, in the language of Chancellor KENT, it should not be carried beyond the precise facts upon which the case rested.

In the case at bar, there was no such evidence of an intention on the part of the company to surrender its corporate functions. There had been no sale of its property, and so far as there was any proof of the condition of its affairs, it had property more than enough to pay its debts ; and although it had resolved to wind up its affairs, there was no proof to show that it had ceased to act as a corporation. There had been no judgment recovered against it at this

Sebastian Bradt *v.* Ephraim Benedict.

time; indeed, the condition of the corporation was very different from the condition of the one deemed to be dissolved in *Slee* v. *Bloom.*

Again, in that case, the principle was laid down that a surrender might be effected by acts *in pais*, and it seemed to be decided as a question of fact. The intention on the part of the corporation was inferred from all the facts proved. If, therefore, the surrender or non-surrender in such a case be determined as a question of fact, the judge before whom the cause was tried having determined in this case that there had been no surrender, on the part of the company, of the corporate franchises, his decision must be deemed final and conclusive upon this court.

Again, there may be a question whether the plaintiff is not estopped from alleging that there was such a dissolution of the company as to make the defendant liable for its debts. The defendant, on the fourth of April, transferred his stock to Fuller, who was then the owner and holder of the demand upon which this action is brought. He received the transfer of the stock as the stock of an existing corporation. It seems to me, therefore, that Fuller would have been estopped from alleging that the corporation was then dissolved. And, if he could not have sustained an action against the defendant upon the demand while he held it, it is difficult to see how his assignee can sustain one.

Upon the whole, I think the cause was correctly disposed of at the circuit, and the judgment at the general term should be affirmed.

All the judges concurring,

Judgment affirmed.