THE PEOPLE OF THE STATE OF NEW YORK *vs.* THE NORTHERN RAILROAD COMPANY and others.

A motion for a stay of proceedings in an action, on the ground that another suit is pending which embraces the same matters, will not be granted where the parties to the two actions are not the same, and it does not appear that the entire relief demanded and sought for in the one action could be awarded in the other.

Such a motion is, if not exclusively, certainly to a very great extent, addressed to the discretion of the court at special term; and so far as it is of that character, the decision of the court cannot be overhauled on appeal.

Where the material allegations of a complaint, in an action by the people, against a corporation, for its dissolution, are not denied by the answer, and it thus stands admitted of record that the corporation has forfeited and surrendered its charter and franchise, it would not be a proper exercise of judicial authority to stay the proceedings on the ground of another action pending, in which the corporation is plaintiff, the effect of which would be to prevent the entering of the judgment required by the law to be awarded, and to permit the corporation to continue in the use of its corporate rights.

Where the complaint in such an action alleged that the corporation was insolvent in 1854; (thirteen years before) that it then surrendered its property to its creditors; that it had remained insolvent ever since; had ever since neglected to pay its notes and other evidences of debt, and entirely suspended its ordinary and lawful business; and that another corporation with the same general object had, under the authority of the state, organized and was in actual operation in its place and stead; which facts were not denied in the answer, although the alleged forfeiture was attempted to be excused; *Held* that it was a proper case for a judgment of forfeiture, dissolving the corporation, and restraining defendants who were charged with usurping and attempting to exercise its franchise from further exercising the same, and imposing a fine for its previous unlawful use.

*Held, also,* that the fact of insolvency and suspension of business being admitted in the answer, the law admitted no excuse for the forfeiture, nor was any explanation available.

*Held, further,* that there being no issue in the case to be settled or determined by evidence, and no trial being necessary, beyond an application of the law to the facts, it was the right of the plaintiffs to apply to the court, at special term, for judgment, on the pleadings.

The judgment of forfeiture, given in such a case, may direct the appointment of a receiver of the corporation; notwithstanding section 444 of the Code makes it the duty of the attorney-general, immediately after the rendition of such judgment, to institute proceedings for that purpose. That provision of the Code was intended to cover the case where no receiver was appointed in the judgment, but does not prevent the court from rendering complete and perfect relief in and by the judgment itself.

The People *v.* Northern Railroad Company.

THIS action is in the nature of a *quo warranto*, to dissolve a corporation known as the Northern Railroad Company, and for other relief.

The complaint charged that the corporation received its charter under an act of the legislature, passed in 1845; that it became and was insolvent in October, 1854, and had ever since remained insolvent; since which time it had neglected to pay its notes and other evidences of debt, and entirely suspended its lawful and ordinary business; that it had surrendered its franchise to the government; and that the three natural persons named as defendants with the corporation had usurped and unlawfully attempted its use and exercise after such forfeiture and surrender. The company and the three persons joined with the corporation, as defendants, answered the complaint, jointly.

The plaintiff insisting that the answer contained no denial of any material allegation of the complaint, moved the court, at special term, for judgment against the defendants on the pleadings; and the defendants at the same time moved to stay the proceedings in this action until the determination of another suit pending in this court, wherein the Northern Railroad Company was plaintiff and the Ogdensburgh and Lake Champlain Railroad Company and others were defendants; which suit, as was alleged, embraced the same matters presented for adjudication in this action. The court denied the motion to stay, and gave judgment against the defendants on the pleadings for the relief demanded in the complaint.

The following opinion was delivered by the justice, at the special term:

JAMES, J. The counsel for the defendant first interposed, as a preliminary objection, that this cause could not be brought on for hearing at special term, but should go upon the circuit calendar, and be tried by a jury. By the Code, (§§ 253, 254, 255,) all issues except in actions for

the recovery of money only, or of specific real or personal property, or for divorce on the ground of adultery are triable by the court, and may be tried at circuit or special term. (*Rule* 28.) As this action is not within either of the exceptions in section 253, it follows that it may be tried at special term. The motion is therefore denied.

The Revised Statutes (*vol.* 2, *p.* 463, § 38,) enact that "whenever any incorporated company shall have remained insolvent for one whole year, or part of one year, shall have neglected or refused to pay and discharge its notes, or other evidences of debt; or for one year shall have suspended the ordinary and lawful business of such corporation, it shall be deemed to have surrendered the rights, privileges and franchises granted by the act of incorporation, or acquired under the laws of this state, and shall be adjudged to be dissolved."

The Code, (§ 430,) provides that an action may be brought by the attorney-general, in the name of the people of the state, for the purpose of vacating the charter, or annulling the existence of a corporation, other than municipal, "whenever such corporation shall have forfeited its privileges or franchises by failure to exercise its powers, or done or omitted any act which amounts to a surrender of its corporate rights, privileges and franchises," and it is made the duty of the attorney-general to apply for leave, and when granted to bring the action.

The complaint distinctly alleges facts which bring this case within the provisions of section 38 of the Revised Statutes above quoted.

The answer is one which would have been stricken out on motion, as sham and irrelevant. It is, in form, a violation of the express requirements of the Code. Section 149 requires the answer, to contain "a general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge thereof, sufficient to form a belief;" and section 168 declares that

The People *v*. Northern Railroad Company.

" every material allegation of the complaint not controverted by the answer, as prescribed in section 149, shall for the purposes of the action be taken as true." None of the material allegations of this complaint are so controverted by the answer. The defendants do not claim that the answer contains a general or specific denial of such material allegations; they only claim that it contains a denial of each and every allegation, " not in the answer specifically admitted or denied." That is not what the Code authorizes or requires. It does not authorize or require admissions; and denials are required to be general or specific, not dependent, contingent or constructive, nor to be spelled out from irrelevant and immaterial matter. Such an answer may be convenient to enable a defendant to escape the penalty of perjury, but it is not authorized by the Code, and does not amount to a denial of any material allegation of the complaint.

This answer demonstrates the wisdom of the Code, in limiting the denials in an answer to general or specific denials, and the necessity of strictly adhering to those requirements. It contains 161 folios; if well pleaded the court is required to wade through these 161 folios to ascertain what is specially admitted, or specially *denied*, in order to determine what is *denied*. This answer seems to be an old complaint remodeled and varnished; its statements are often confused and incongruous, and it is sometimes difficult to determine whether a statement is intended for an admission or a denial; as, when it admits a judgment against the corporation and then asserts it void.

But the Code declares that every material allegation in a complaint, not controverted by the answer, as prescribed by section 149 is, for the purposes of the action, to be taken as true; none of the material allegations of the complaint in this case are so controverted. It therefore follows that they stand admitted, and being so admitted, the plaintiff is entitled to the judgment demanded.

But a careful examination of the answer would show the admission of the incorporation of the Northern Railroad Company, its construction of a road from Ogdensburgh to Rouse's Point; that a certain portion of the cost of said road was paid for by capital stock subscribed and paid in, and the balance was obtained on bonds secured by mortgages upon its roads, &c. that one or more of said mortgages was sought to be foreclosed, a decree of sale obtained, a sale of the roads, &c. had, and possession taken under such sale, over ten years ago ; that a balance is due and unpaid on said bonds and has been for several years; that said corporation is not in possession of said road or its franchises, and has not been for years; that its ordinary and lawful business has been suspended for over ten years; and that unless such bonds and mortgages can be repudiated in whole, or in part, it is wholly insolvent. This covers the whole ground of the complaint; brings the case clearly within the statute above cited; and as between the people and the corporation, demands its dissolution.

The people have nothing to do with the alleged illegal and fraudulent acts of the directors and trustees of said corporation and others, as set forth in the defendants' answer. Such acts, if committed, do not constitute any defense to this action, but on the contrary, furnish cumulative reasons why the corporation should be dissolved, and its assets put into the hands of a responsible receiver.

This is sufficient to dispose of the case, so far as the Northern Railroad Company is concerned ; for if its dissolution has not been made complete by the statutes and proceedings set forth in the answer, it would be by the decree which must be entered in this action.

In respect to the liability of the individual defendants to punishment for the alleged violation of law in setting up and using a franchise within this state without lawful authority, it is necessary to inquire whether the franchise

The People *v.* Northern Railroad Company.

was gone from the Northern Railroad Company at the time of the acts complained of.

That said company had, for more than a year, suspended the ordinary and lawful business for which the franchise was granted by the state, appears by the answer. It shows such suspension ever since 1854. This alone is sufficient to amount to a surrender. The statute is peremptory in saying that upon any such default for one year, the corporation "shall be deemed to have surrendered the rights, privileges and franchises granted by any act of incorporation, or acquired under the laws of this state, and shall be adjudged to be dissolved." In the language of Judge SUTHERLAND, in *Bank of Columbia* v. *Attorney-General,* (3 *Wend.* 596,) "no explanation is admissible."

Did such a surrender *ipso facto* dissolve the corporation ? Or, what was necessary to make the dissolution complete ? These questions were tersely answered by the Court of Appeals in *Bradt* v. *Benedict,* (17 *N. Y. Rep.* 99.) It says, "As a general rule, to constitute a dissolution of a corporation by a surrender of its franchise, the surrender must be accepted by the government, or a default must be judicially ascertained and declared." The complaint shows, that in this case the surrender was accepted by the government, and also that it is judicially ascertained and declared. The answer puts in issue the validity of the judgment of dissolution, but it sets forth the statute of March 31, 1857, being the "act to provide for the formation of a corporation in place of the Northern Railroad Company, dissolved," &c. and alleges the regular formation of a railroad corporation under it, to wit, the Ogdensburgh Railroad Company in 1858, to which corporation, by the terms of the act, the rights to the franchise became transferred, so far as the assent of the state was necessary. The answer also sets forth the amendment of April 8, 1864, to act of 1858, under which it appears that the Ogdensburgh and Lake Champlain Railroad Company became incorporated.

By each of these statutes, the legislature accepted the surrender of the franchise before granted to the Northern Railroad Company, and provided for conferring it upon another corporation. The old corporation was, therefore, "dissolved in fact" and likewise dissolved in law as early as 1858. It necessarily follows that the defendants should be adjudged guilty of usurping and using, without lawful warrant or charter, the franchise of being a corporation as charged.

Judgment must therefore be given, declaring the Northern Railroad Company dissolved, appointing a receiver and making the injunction against the defendants perpetual, and in favor of the plaintiffs for costs against the defendants who joined in the answer, and that the defendants be fined in a sum to be fixed on the settlement of the decree, to be collected and paid into the treasury of the state.

In most cases the usurpation of a franchise not granted, is not a very serious offense, as it does not materially injure the state, or its citizens; but in this case the usurpation is of a serious character, and its necessary tendency was to unsettle and depreciate the value of the franchise subsequently granted by the state, and hindering and obstructing the corporation holding it, and carrying out the beneficent objects for which it was granted.

Judgment being entered accordingly, the defendants appealed from the order and the judgment.

*C. C. Langdell,* for the appellants. I. The defendants' motion to stay proceedings ought to have been granted. (*McCarthy* v. *Peake,* 18 *How. Pr.* 138. 9 *Abb. Pr.* 164.) The ground upon which it is understood to have been denied, was that the parties to the two actions were not the same, and that the rights of the people could not be affected by any thing which had taken place between the two railroad companies. But the rights of the people are

not at all in question, and they are only formal parties to the suit; they have merely lent their name to the Ogdensburgh and Lake Champlain Railroad Company under the provisions of a statute, and the latter are the real plaintiffs in the suit. In the English practice, when a *quo warranto* is brought in the interest of the public, the information is filed by the attorney-general on his official responsibility, without any relator and without any application to the court; but when the crown merely lends its name to a private party, the information is filed by the master of the crown office, after leave obtained from the court; and the suit is regarded, for all practical purposes, as a mere private suit between the retator and the defendant. (*Cole on Informations, p.* 113.) The same distinction exists with us, though not so strongly marked. (*Code,* §§ 430, 434.) Undoubtedly, in a strict legal and technical sense, the people are the plaintiffs and the only plaintiffs in the suit; but in making a motion to stay proceedings, the defendants were appealing peculiarly to the equitable jurisdiction of the court, and the court had the power, and it was its duty, for the purposes of that motion, to look beyond the record, and ascertain who were the real parties in interest. In this connection also, the court will consider whether leave to commence the suit ought ever to have been granted. When a private citizen wishes to wield the sovereign power of the people by bringing a suit in their name, it is obvious that his right to do so should either be carefully limited and defined by rules prescribed for that purpose, or it should be subject to a very large discretionary power in some department of the government. In this state, the latter course has been taken, and this discretionary power has been reposed in the Supreme Court. By the letter of the law, the attorney-general has no discretion at all, it being made his duty to proceed whenever he shall have reason to believe that a case can be made out which will entitle the people to recover. (*Code,* § 430.)

The discretion of the court, on the contrary, is unlimited, and it exercises the entire sovereign power of the state on that subject. The judge, therefore, before granting leave to commence the suit, should have inquired, not merely whether a case could be technically made out against the defendant, but whether it was a case in which a private party should be permitted to wield the sovereign power of the people; and for that purpose he should have directed notice to be given to the accused corporation, and heard what it had to say upon the subject. Such has always been the practice of the English courts under statutes similar to our own. (*Cole on Informations, p.* 165, *et seq.*) Thus, in *Rex* v. *Wardroper,* (4 *Burr.* 1964,) Lord Mansfield said: " The court must exercise a discretion. It would be very grievous if the information should go of course; and it would be a breach of trust in the court to grant it as of course. On the contrary, the court are to exercise a sound discretion upon the particular circumstances of every case." So in *Rex* v. *Parry,* (6 *A. & El.* 810,) Lord Denmam said: " The argument at the bar, in support of the present rule did not, and could not, stop short of denying all discretion in this court as to originating proceedings in *quo warranto.* It was in effect asserted that wherever a reasonable doubt is raised as to the legal validity of a corporate title, we are bound to grant leave to file the information. This proposition, however, is wholly untenable. Every case (and they are most numerous,) which has turned upon the interest, motives or conduct of the relator, proceeds upon the principle of the court's discretion; however clear in point of law the objection may have been to the party's abstract right to retain his office, yet the court has again refused to look at it, or interfere upon one or other of these grounds;" *i. e.* upon the ground that the relator had no interest in the question which authorized him to interfere, (*Cole on Informations, p.* 172,) or that his motives appeared to be such as not to entitle him to the favorable

The People *v.* Northern Railroad Company.

consideration of the court, or that his conduct had been such as to estop him from making the application.

Judged by these rules, in what light does the Ogdensburgh and Lake Champlain Railroad Company stand? What interest had they, and what were their motives in applying for leave to commence this suit? A suit had been brought against them by the Northern Railroad Company, in the ordinary course of legal proceedings, and they, instead of pursuing the ample remedies provided by law for all litigants, had the assurance to ask the sovereign people to interfere in their favor, and end the suit without a trial, by destroying their adversary. Any person who happens to be sued by a corporation might make a similar application with equal propriety, if he could discover that the corporation had ever, by accident or misfortune, rendered itself technically liable to a forfeiture of its charter. In one respect, indeed, the suit brought by the Northern Railroad Company is out of the ordinary course, for it alleges that the very acts and omissions which are relied upon as a ground for forfeiting its charter, were caused by the fraud of persons under whom the Ogdensburgh and Lake Champlain Company make title, and with whom they are in legal privity.

II. The court below erred in entertaining an application for judgment on the pleadings as a non-enumerated motion. 1. Such an application can only be made when the cause has been reached in its order on the calendar, and is brought on for trial, pursuant to a notice for that purpose. The practice is not derived from the Code of Procedure, but from the former practice in chancery of bringing a cause to a hearing upon bill and answer. (1 *Van Santvoord's Eq. Pr.* 467, 468.) 2. It is obvious, both from the origin of the practice and from its nature, that it can only be employed in equity cases. In cases triable by a jury, there must either be a demurrer, or the verdict of a jury, unless a jury trial is waived. 3. In the present

case the defendants were entitled, by the constitution, (*art.* 1, § 2,) to a trial by jury. It is scarcely necessary to observe that, at the time of the adoption of the constitution, an action of the nature of the present was not only triable by jury, but was in form a criminal proceeding. The learned judge was undoubtedly right in saying that this case was not within the terms of section 253 of the Code of Procedure, and the defendants never claimed that it was; but that section was evidently left in its present condition through an inadvertence, and must give way to the constitution. Section 253 was adopted substantially in its present shape in 1848, while actions in the nature of *quo warranto* were not provided for until 1849; and upon the adoption of title 13 in the latter year, the legislature neglected to make the necessary change in section 253.

III. The application for judgment should have been denied upon the merits. 1. The whole gist of the complaint, without which the action falls to the ground, is contained in folios 8, 9; and that is fully denied in the answer. The form of demand is in entire conformity with the requirements of the Code of Procedure. (*Parshall* v. *Tillou*, 13 *How. Pr.* 7.) 2. Assuming that the answer is open to the criticisms made upon it by the court below, it does not follow that all the allegations in the complaint are to be taken as admitted. If a pleading fails to comply in form with all the requirements of the law, it can be corrected by motion, at the expense of the party who has committed the fault; but to treat it as a nullity is as hostile to the spirit of our present system of practice as it is inconsistent with every idea of natural justice. The words " as prescribed in section 149," were inserted in section 168 of the Code of Procedure for the mere purpose of reference and explanation, and they do not warrant the construction placed upon them by the court below. Section 149 is merely directory, and a compliance

with its provisions is to be enforced by motion. 3. The plaintiffs were not entitled to judgment upon any admissions contained in the answer. When a plaintiff seeks to make use of allegations in an answer as admissions, he must take the whole of the allegations, as well the facts which make against him as those which make in his favor. Bearing this in mind it will be found that, although the answer admits an attempt to foreclose the second mortgage, it alleges that the pretended foreclosure was without notice to the Northern Railroad Company, and was fraudulent and void; and that the second mortgage trustees, while they held possession of the road, were only mortgagees in possession, and that the Ogdensburgh and Lake Champlain Railroad Company, since it came into possession of the road, has had no other or greater rights than those of a mortgagee in possession. So, also, although it may be admitted indirectly in the answer that a balance is due upon the face of the second mortgage bonds, yet it denies the validity of those bonds. Therefore, the answer does not admit any of the acts charged in the complaint as a cause of forfeiture. It clearly does not admit insolvency, nor a neglect of the Northern Railroad Company to pay its notes or other evidences of debt; nor does it admit that said company has suspended its ordinary and lawful business as a corporation, for it alleges that the road has always been run, either by itself or by those who acted on its behalf as mortgagees in possession, and who were accountable to it for all their acts.

IV. The court below erred in holding that by the acts of March 31, 1857, and April 8, 1864, the legislature accepted the surrender of the franchise before granted to the Northern Railroad Company. Both of those acts were private acts, to which the Northern Railroad Company was a total stranger, and by the well settled rule, they could have no effect whatever upon its rights. (*Catlin* v. *Jackson*, 8 *John.* 520, 555 *et seq.* 1 *Kent's Com.* 459, 460.)

V. The court below had no authority to enjoin the defendants and appoint a receiver. 1. The authority contained in section 444 of the Code of Procedure is expressly limited to proceedings instituted for that purpose, *after* the rendition of *judgment* dissolving the corporation. 2. Section 444 only gives the same power that is given in article 3, title 4, chapter 8, part 3 of the Revised Statutes; but upon examining that article it will be found that it gives no power whatever to issue an injunction or appoint a receiver. It is confined entirely to the voluntary dissolution of corporations.

*M. B. Champlain* (attorney-general) and *Wm. C. Brown,* for the respondents. I. The defendants' first point is that the motion to stay proceedings should have been granted. They claim that the parties to the two actions are *substantially* the same. It would be a sufficient answer to say the courts never stay proceedings in one action to await the result of another, except when the parties are not only, in the opinion of some persons, substantially the same, but only when they are *precisely* the same. In this case the state is not merely a nominal plaintiff, but the real plaintiff in interest. The government grants corporate franchises only to be used for the public good and withdraws them when not so used. It is the duty of the attorney-general to bring all such actions as the present whenever he has knowledge of the facts; and the action is no less by and in behalf of the people because he waits until information and security is given to him, pursuant to the 430th section of the Code. He must bring the action whenever he has reason to believe it can be maintained, and in all other cases upon receiving satisfactory indemnity. It is as much the action of the state as any other action, civil or criminal, brought in the name of the people to enforce the laws. And, besides, the state alone is interested in the fine imposed. (*Code,* § 441.) The

The People *v.* Northern Railroad Company.

defendants' counsel, therefore, is quite mistaken in re-
ferring to this action as one in which a private party is
permitted to "wield the sovereign power of the state."
He might as well assert that any man who enters a com-
plaint before a grand jury and procures an indictment
which the district attorney is compelled to prosecute,
"wields the sovereign power of the state;" and that the
trial-of the indictment should be stayed until the prisoner
should bring to trial an action he commenced against the
complainant upon some kindred subject.

The claim that the Ogdensburgh and Lake Champlain
Railroad Company is in legal privity with the officers of
the Northern Railroad Company is so absurd that it might
well be passed unnoticed. The Ogdensburgh and Lake
Champlain Railroad Company is composed of those, and the
assignees of those, who were the creditors of the Northern
Railroad Company, and by reason of that relation alone
came into possession of the property. The idea that a
creditor is to have the sins of his debtor visited or reflected
upon him by reason of any "legal privity," is quite new,
and based upon no reason or authority.

II. The cause was properly brought to a hearing at
special term and by motion for judgment upon the plead-
ings. The defendants claim that they were entitled to a
trial by jury under article 1, section 2 of the constitution,
which says: "The trial by jury in all cases in which it
has been heretofore used shall remain inviolate forever."
But a trial by jury has never "been heretofore used," ex-
cept when there has been a material issue of fact to be
determined. Even a person accused of crime is not, and
never was, entitled to a trial by jury unless he denies the
crime imputed to him; and no case, civil or criminal, was
ever triable by jury unless there was a material issue of fact
presented by the pleadings. Whether the legislature were
or not guilty of an inadvertence in not amending section
253 of the Code, after the adoption of the law of 1849, is

entirely immaterial, because whether in cases of *quo warranto* the trial shall be by jury or not, it is certain it cannot be by jury when no material issue of fact is presented.

III. Judgment was properly given for the plaintiffs upon the pleadings.

We are quite willing to accept the statement of the learned counsel for the defendants that the *gist* of the complaint is in folios 8 and 9, but respectfully object to the statement that it is denied by the answer. The material statements referred to in those folios, without which "the action falls to the ground," are that the corporation was insolvent in October, 1854, ever since remained insolvent, neglected to pay its notes and other evidences of debt, and suspended the ordinary and lawful business of such corporation. To make an issue for trial by jury it was necessary for the defendants to deny these allegations in the disjunctive and aver that neither of those conditions of things had continued for one whole year. But it is evident from the answer itself, as it is by facts of public notoriety, and emblazoned upon the records of this court, that no such denial could be made without subjecting the person verifying the answer to conviction for perjury. An admission of the substance of either of these three allegations, entitles the plaintiffs to judgment. And a careful examination of the answer will show that they are all substantially admitted.

Again, the answer shows all through its entire scope that the Northern Railroad Company has suspended its ordinary and lawful business ever since 1854. Its whole burden is of complaints against its own officers for ruining its credit, wasting its property and depriving it of the possession and control of the road. The pretense in the defendants' points that the answer alleges that "the road has always been run, either by itself or by those who acted on its behalf," finds no warrant in that document. Its averments are that the trustees of its creditors seized the

road, obtained possession and at least an apparent good title under judicial process, and held and operated the road as trustees under appointment of this court, for the benefit of creditors and in hostility to the Northern Railroad Company, until they transferred by order of the court to their *cestuis que trust* on their becoming incorporated as the Ogdensburgh and Lake Champlain Railroad Company. For either of those acts or omissions the statute peremptorily declares the corporation shall be dissolved. As was said by SUTHERLAND, J. in *Bank of Columbia* v. *Attorney General*, (3 *Wend.* 595, 6,) "no explanation is admissible." In *Bradt* v. *Benedict*, (17 *N. Y. Rep.* 93,) the court say this section (38th) is substantially cumulative. "A series of decisions in this state had established the doctrine that if a corporation suffers acts to be done which destroys the end and object for which it was instituted, it is equivalent to a surrender of its rights." (*Slee* v. *Bloom*, 19 *John.* 456. *Briggs* v. *Penniman*, 8 *Cowen*, 387. *Bank of Poughkeepsie* v. *Ibbotson*, 24 *Wend.* 473.) The statute goes much farther, and provides that a mere suspension of the ordinary business of the corporation (for one year) shall operate as a surrender." The great labor of the answer in our case is to make out excuses and palliations for the suspension; not to deny the fact. But the statute admits of no excuses. It is peremptory, emphatic, and leaves nothing to the discretion of the attorney-general or of the court.

IV. Even upon the common law rule, aside from the statute, the allegations of the complaint and admissions in the answer establish a case demanding judgment of dissolution. (*Slee* v. *Bloom*, 19 *John.* 456. *Brinckerhoff* v. *Brown*, 7 *John. Ch.* 217. *Briggs* v. *Penniman*, 8 *Cowen*, 387.) In the latter case, (page 391,) Judge Woodworth approves the rule as established by previous cases, viz: That "if a corporation suffers acts to be done which destroy the end and object for which it was instituted, it is equivalent to

a surrender of its rights." Now, in our case the Northern Railroad Company had clearly suffered acts to be done which destroyed the end and object for which it was instituted. Its franchise was granted with the object that it should, as a corporation, subject at all times to the control of the legislature, construct a railroad and carry freight and passengers thereon under regulations prescribed or to be prescribed by the legislative authority. The legislature could limit rates of fare and freight, and could make any changes they deemed proper in regard to the management and use of the property, so long as it was in the possession of the corporation, and could require the corporation to make returns, &c. But the legislative control ceased when the property passed from the corporation to trustees, who are to all intents and purposes receivers, subject to the orders of the court, and representing titles and rights vested in them when they took the property and which could not be withdrawn or curtailed by the legislature. The trustees, acting as receivers in possession, might lawfully, with the authority of the court, have sold the land, rails, cars, buildings, &c. separately, for purposes foreign to those for which the franchise was granted. The court would probably have interfered to prevent any thing of this kind as improvident and not beneficial to creditors, or the legislature might have passed some law to prevent it; but the point seems clear that the Northern Railroad Company had suffered (against their will, if you please,) acts which rendered them incapable of fulfilling the purposes for which the franchise was granted, and destroyed, so far as they were concerned, the end and object for which that corporation was instituted. It is no answer to say that their successors have substantially carried out the purposes of the franchise. Those who did it, so far as it has been done, were not the agents of the Northern Railroad Company, but holding adversely to them and acting solely for creditors. This corporation, the Northern Railroad Com-

pany, had not "the moral or legal capacity to resume its business," and was therefore dissolved, independently of the statute. (*See Bradt* v. *Benedict,* 17 *N. Y. Rep.* 93.)

V. The surrender had been accepted by the government and had been judicially ascertained and declared before the commencement of this action. 1. By the acts of March 31, 1857, and April 8, 1864, the government had accepted the surrender. These acts provide "for the formation of a corporation in place of the Northern Railroad Company, dissolved." This is the purpose named in the titles of the acts. The body of the acts authorize and require the second mortgage trustees, who the acts say, "hold in trust for the benefit of the holders of the second issue of bonds, the property, privileges and franchises lately of the Northern Railroad Company by purchase, pursuant to the decree of the Supreme Court," &c. to call a meeting of their *cestuis que trust,* the bondholders, to organize a corporation "as authorized by the said decree of foreclosure," &c. The acts then provide the details of proceedings for the formation of the new corporation. Its capital to be the amount of the principal of the second mortgage bonds. And the acts provide for a transfer of the property to the new corporation, subject to the mortgages to the first mortgage trustees; and for a new mortgage to the first mortgage trustees, to embrace "all the property, rights, powers, privileges and franchises of the said company, including the franchise to be a corporation," &c. And section seven of the act of 1864, provides, "Should any difference of opinion arise as to the right of the said corporation to the transfer hereinbefore provided for at the time when claimed, the said corporation may apply to the Supreme Court of this state, at any general term thereof, for an order instructing the trustees to make such transfer. The court shall direct notice to be given by publication in the manner provided in the first section of this act to all persons who have heretofore been

made parties to any and all decrees heretofore made by the Supreme Court of this state in respect to either of the mortgages heretofore executed by the Northern Railroad Company, and shall make such determination therein as shall be just and equitable." We have here the most clear and unqualified recognition by the government of the forfeiture and surrender of the franchise by the Northern Railroad Company; and the acceptance of that surrender by provision to confer the franchise on a new corporation. These acts are alleged in the complaint and not denied, but expressly averred, in the answer. The incorporation of the Ogdensburgh and Lake Champlain Railroad Company pursuant to said acts, and the transfer to them, are averred in the complaint and not denied in the answer. 2. The surrender of said franchise by the Northern Railroad Company was directly involved in the determination by the general term of the question whether the Ogdensburgh and Lake Champlain Railroad Company was entitled to a transfer of the road pursuant to the act of April 8, 1864. That act gave the court full jurisdiction of that question, and of all questions involved in it, and required notice to all persons who had been made parties to any of the decrees theretofore made by the Supreme Court relative to either of the said mortgages. This embraced the Northern Railroad Company, and the record shows that the notices were duly given.

VI. It is averred in the complaint that the defendants, by the false pretense that the Northern Railroad Company was and is an actual legal existing corporation and owner of a railroad, and that it was only necessary for them to be furnished with money to obtain possession thereof, persuaded large numbers of persons who are stockholders of the Northern Railroad Company to pay them large sums of money amounting to $4000, &c.; and have sold stock of said Northern Railroad Company, and have usurped and used, and still do usurp and use, the franchise

of being a body politic and corporate, by the name of the Northern Railroad Company, and have held on the 7th March, 1868, a pretended election of directors of such corporation, and have commenced an action in this court against the Ogdensburgh and Lake Champlain Railroad Company and others to obtain possession of said road. These allegations are not denied, but so far as the answer speaks to them they are admitted. The answer avers that on the 7th of March, 1866, the stockholders of the Northern Railroad Company, "said company not having elected directors for several years prior thereto," met at Ogdensburgh and elected thirteen persons duly qualified as directors, &c. The answer also avers that the "Ogdensburgh Railroad Company" was duly and regularly incorporated and organized in December, 1857, under the act of March 31, 1857, and said corporation has never been dissolved, but still exists and is entitled to all the property and privileges given to it by said act and to all the property in the hands of the trustees, if any corporation could be authorized by law to receive such property. And the answer avers the act of April 15, 1858, declaring said "Ogdensburgh Railroad Company" a duly incorporated company. Upon these allegations alone our case is fully maintained on the admissions of the answer. 1. That the Northern Railroad Company had forfeited its franchise prior to 1857, is abundantly maintained, as before shown. 2. That the legislature could confer the franchise upon another corporation and authorize it to receive the property, is beyond dispute. 3. That they did confer it upon the "Ogdensburgh Railroad Company," in 1857 and 1858, is alleged in the answer, and is unnecessary for us to deny. 4. The Northern Railroad Company had lost the franchise, and it had been conferred upon another corporation. Whether that corporation which received the franchise was the "Ogdensburgh Railroad Company," or the "Ogdensburgh and Lake Champlain Railroad Company," is wholly immaterial

to this action. The gist of this action is that the defendants did, without lawful warrant or charter, usurp and use the franchise of being a corporation, and that stands admitted in the answer. The statute meets this case squarely. (*Code,* § 441.) "When any defendant, &c. shall be adjudged guilty of usurping, or intruding into, or unlawfully holding or exercising any * * * franchise * * * judgment shall be rendered that the defendant be excluded from such franchise, and also that the plaintiffs recover costs against such defendant. The court may also, in its discretion, fine such defendant a sum not exceeding $2000, which fine, when collected, shall be paid into the treasury of the state." In *The People* v. *Thompson,* (16 *Wend.* 655,) it was decided that to maintain the action is is not sufficient to show a mere claim to the franchise by the defendants, but that a user must be shown. See the authorities there cited. Now, we show by the undenied averments of the complaint and the admissions and allegations of the answer a clear case of user of the franchise. In *King* v. *Ponsonby,* (1 *Vesey Jr.* 1,) it was decided that the king may, at his discretion, seize the franchise of a corporation guilty of an offense amounting to a forfeiture; and for this Lord Ryder, Ch. J. cites *Boggs' case,* (11 *Coke,*) and the case was affirmed by the house of lords. (5 *Brown P. C.* 287.) Bacon says, (*Abridgment, Corporations, G,*) "If the members of a corporation refuse or neglect to choose such officers as they are obliged to choose by their charter this is a forfeiture and consequntly a dissolution of the corporation." The note says: "In such case the corporation is dissolved without any legal proceeding, but for a forfeiture it is not dissolved without the judgment of a court of law to enforce it." In *Bradt* v. *Benedict,* (17 *N. Y. Rep.* 99,) the court say: "As a general rule, to constitute a dissolution of a corporation, by a surrender of its franchise, the surrender must be accepted by the government, or the default must be judicially ascer-

The People *v.* Northern Railroad Company.

tained and declared." In *Rex* v. *Pasmore* (3 *Term R.* 199,
241,) cited with approval in *Slee* v. *Bloom*, (5 *John. Ch.* 366,)
it was held that when the integral part of a corporation was
gone and the corporation has no power of restoring it or
of doing any corporate act, it was so far dissolved that the
crown might act and grant a new charter. "It was only
for the crown to interfere, without a forfeiture judicially
declared,  *  *  the crown might thus grant a new char-
ter, said Mr. Justice Buller, without weighing very nicely
whether the corporation could be said to be actually dis-
solved or only in danger of being so.  *  *  *  The cor-
poration is not dissolved until the crown interferes." Kent
says, (2 *Com.* 221,) "The better opinion would seem to be
that a corporation aggregate may surrender and in that
way dissolve itself; but then the surrender must be
accepted by government and be made by some solemn act
to render it complete." Here was a surrender by virtue
of the 38th section of the statute before quoted, and
an acceptance by solemn act, viz. the statutes of 1857
and 1858.

VII. It is worthy of remark that the basis of all the
pretended defenses set up in the answer, when stripped of
general undefined charges of fraud, too indefinite to be
the subject of an issue for trial, is that the board of direc-
tors of the Northern Railroad Company, elected in 1854,
was an illegal board, were illegal directors and fraudulent
directors, the specification being that a majority of the
directors were not stockholders; and a copy of the by-laws
is annexed to the answer. The first by-law, (page 68,)
provides that "There shall be elected by ballot from the
stockholders, thirteen directors," &c. But when we refer
to the charter of the corporation, (*chapter* 324, *Session
Laws of* 1845, *page* 352, *and the Attica and Buffalo charter
of* 1836, *adopted therein*,) we find the stockholders have the
right, by the fundamental law, to elect whom they please
directors, with only the limitation that there must be one

resident in each county. That the directors cannot restrict the stockholders in their choice of new directors would seem too obvious for argument. If they can impose any restrictions, they might impose such as would compel the stockholders to re-elect themselves. And the law has, from the earliest time, been very jealous of any attempt of a body of directors to enlarge their own powers or detract from those of the stockholders. In *Angell & Ames on Cor. (chap.* 4, § 2,) it is said, "The corporation at large may, if not inconsistent with the charter, make a by-law creating a select body, to whom they may delegate the power of electing officers and members." "Such a by-law, in order to restrain the right of the commonalty, must be made by common assent, or, in other words, by the commonalty themselves; and if made by a select body, though the power of making by-laws is reposed in them, it is void, for they do not represent the commonalty." (*Angell & Ames,* 283. 2 *Kent's Com.* 369, *n. a, marg.* 294, 392, *marg.* 396.) 2. But the answer also refutes the defense, for it shows that those whom it calls illegal directors came in through the power of election and occupied the office. They were, therefore, directors *de facto,* at least, and their acts as binding upon the corporation as though they had been directors *de jure.* (*Angell & Ames on Cor.* ch. 9, § 4.)

VIII. The defendants claim, in their fourth point, that the acceptance by the legislature of the surrender of the franchise could have no effect, because the acts of March, 1857, and April, 1864, were private acts to which the Northern Railroad Company was a stranger. The case cited, (*Catlin* v. *Jackson,* 8 *John.* 520,) does not appear to have any application here. The Northern Railroad Company was as much a party to the act as any other corporation or person, being expressly named in the act. But it was not necessary that that corporation should be a party to the act. It was a party in doing and suffering these things whereby it surrendered its franchise, and that sur-

The People *v.* Northern Railroad Company.

render only awaited the action of the legislature to accept or reject it.

IX. The court has the power to appoint a receiver under the 444th section of the Code, at the time of rendering judgment of dissolution; though the duty is not made imperative upon the attorney general to institute proceedings for that purpose until after the judgment.

*By the Court,* BOCKES, J. The motion for a stay of proceedings was addressed to the discretion of the court at special term, if not exclusively, certainly to a very great extent. In so far as it was addressed to the discretion of the court, its decision cannot be overhauled on appeal. But the denial of the motion was manifestly right in every possible aspect of the case. In the first place, the parties to the two actions were not the same, nor does it appear that the entire relief demanded and sought for in this action could be awarded in the other.

Again, if it be true (and the court found and adjudged it to be true on an examination of the pleadings) that the material allegations of the complaint were not denied by the answer; that is, that it stood admitted of record that the Northern Railroad Company had forfeited and surrendered its charter and franchise, there was certainly no reason for staying the proceedings in the action; the effect of which would be to prevent the judgment which the law declared should be awarded on a given, admitted or established state of facts. In such case, to permit the company to continue in the use of its corporate rights, by an order staying judgment, would be an arbitrary exercise of judicial authority and favoritism most unbecoming in the court.

We are thus brought to consider the case on the motion for judgment against the defendants on the pleadings.

The complaint charges clearly and unequivocally both a forfeiture and surrender of the corporate rights and fran-

chises of the corporation known as the Northern Railroad Company; also, a usurpation of right and authority by the individuals named in the judgment, in violation of the statute. It is alleged, in terms, that the corporation was insolvent in October, 1854; that it then surrendered its property to its creditors; that it has remained insolvent ever since; has ever since neglected to pay its notes and other evidences of debt, and entirely suspended its ordinary and lawful business; and further, that another corporation, with the same general object, had, under the authority of the state, organized and was in actual operation in its place and stead. Are these averments of fact denied? Indeed is either charge denied? Unless denied by a general or specific denial in the answer of the defendants, they stand uncontroverted, and for the purpose of the action are to be taken as true. (*Code,* §§ 149, 162.)

The answer is stuffed with irrelevant and redundant matter. But in the detailing thereof, the insolvency of the corporation; its surrender of its property to its creditors; its neglect to pay and satisfy its evidences of debt; its suspension of its ordinary and lawful business, and the organization of another company in its stead, under legislative authority, are in substance and effect stated and admitted.

There is no attempt at a specific denial of any allegation of the complaint; and the denial which follows a prolix and confused narrative, in regard to the business affairs of the company, of each and every allegation and averment of the complaint, not before specifically admitted, raises no issue of fact in the case when construed with reference to the prior statements and admissions contained in the answer. It is entirely plain that the defendants did not intend to deny the principal facts charged. It is manifest from their own statement of facts, that they could not truthfully do so. The whole tenor of the answer is to the effect that the corporation had long since become insolvent

The People *v*. Northern Railroad Company.

and suspended its ordinary and lawful business. According to their own statement of the case, they could not deny these facts, and all they attempt by the pleading is to excuse the alleged forfeiture. The law, however, admits of no excuse, nor is any explanation available in such case. Without attempting an analysis of the answer, it is sufficient to express our concurrence with the learned judge in his opinion, at special term, that a clear forfeiture of the franchise of this corporation stands admitted of record in this case; and especially do we adopt his conclusion, on the grounds fully stated by him, that the company had for more than a year suspended its ordinary and lawful business. This fact stands admitted by the pleadings beyond peradventure. The judgment of forfeiture awarded at special term is well supported by the admitted facts of the case.

If the views and conclusions above stated are well grounded, there was no issue in the case to be settled or determined by evidence, and it was the right of the party to apply to the court, on the first opportunity, for such judgment as the admitted facts authorized. No trial was necessary beyond an application of the law to the facts. The motion for judgment on the pleadings was therefore right and was properly made at special term.

No point is made by the appellants that the fine imposed by the court was unauthorized or excessive in amount. (*Code*, § 441.) This branch of the case, therefore, requires no comment. The authority to appoint a receiver, I think, exists under section 444 of the Code.

At first view, the right seemed doubtful, but on reflection and examination of the several provisions of law bearing on the subject, I am persuaded that the appointment of a receiver in the judgment of forfeiture is well sustained.

The right to bring an action by the attorney-general for the purpose of vacating or annulling the existence of a cor-

poration is given by section 430 of the Code. Section 442 provides that in case of forfeiture, judgment shall be rendered excluding the corporation from its corporate rights, privileges and franchises, and that it be dissolved; and section 444 declares that when such judgment shall be rendered, the court shall have power to restrain the corporation and appoint a receiver of its property; and by the last clause it is made the duty of the attorney-general, immediately after the rendition of such judgment, to institute proceedings for that purpose.

The last clause was intended to cover the case when no receiver was appointed in the judgment declaring the forfeiture; but does not create or suggest an objection to the practice of rendering complete and perfect relief in and by the judgment itself. The restraining power is undoubtedly incident to the right to adjudge dissolution; and the appointment of a receiver is absolutely necessary for the purpose of finally closing the affairs of the defunct corporation. Such appointment should therefore form part of the judgment, as in this case, or should immediately follow it. After due appointment the receiver will be controlled in his action by article 3, title 4, chapter 8, of the third part of the Revised Statutes.

The order and judgment appealed from should be affirmed, with costs.

[SCHENECTADY GENERAL TERM, January 5, 1869. *James, Rosekrans, Potter* and *Bockes,* Justices.]