DAVID W. BRUCE et al., Respondents, *v.* THOMAS C. PLATT et al., Impleaded, etc., Appellants.

In an action under the general manufacturing act (§ 12, chap. 40, Laws of 1848) against a trustee of a manufacturing corporation, to charge him with a debt of the corporation, because of its failure to make and file an annual report, the liability does not depend upon the fact that defendant was a trustee when the debt was incurred, but upon his having been a trustee when the default in filing the report occurred.

Where, therefore, a trustee resigned after the incurring of the debt in question, but before the default complained of, *held*, that he was not liable; also, that it was not necessary for him to give notice to the public, or the plaintiffs or any persons other than his associates, of his intention to resign, or of his resignation.

Where it appeared that in December, 1874, the entire property of such a corporation was sold under execution; that before January 1, 1875, every person interested in it as a corporator had abandoned it; that it was carrying on no business, had no means of procuring money, and intended to do no further act in pursuance of the object of its incorporation; *held*, that the statute did not require the filing of a report for the year 1875; that for every practical purpose the corporation might be deemed to have been dissolved; and so, that its obligation to file a report had ceased before the arrival of the time when the report was required.

The authorities upon the question as to when, so far as the liability of trustees and stockholders of a corporation is concerned, it may be deemed to be dissolved collated.

*Bradt* v. *Benedict* (17 N. Y., 93), and *Sanborn* v. *Lefferts* (58 id., 179), distinguished.

(Argued March 2, 1880; decided March 19, 1880.)

APPEAL by defendants, Wesley and Platt, from judgment, so far as it affects them, of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought under the general manufacturing act (§ 12, chap. 40, Laws of 1848) to recover from the defendants, alleged to be trustees of the New York Republication Newspaper Association, a corporation organized under said act, to recover the amount of a debt due from said corporation to plaintiffs, because of alleged failure on the part of said corporation to file a report within twenty days from January 1, 1875, as required by said act (§ 12).

The facts appear sufficiently in the opinion.

*Wm. Henry Arnoux,* for appellants. The provision of the manufacturing act imposing upon the trustees a liability in case of the failure of the corporation to make, file and publish an annual report is penal in its character ; and nothing, therefore, can be presumed in favor of the plaintiff as against the defendants. Every fact necessary to establish the defendants' liability must be affirmatively proved, for the *onus* is upon plaintiffs to prove the default. (*Whitney Arms Co.* v. *Barlow,* 68 N. Y., 34; *Wiles* v. *Suydam,* 64 id., 173, 176; *Merchants' Bank* v. *Bliss,* 35 id., 412; *Garrison* v. *Howe,* 17 id., 458; *Derrickson* v. *Smith,* 27 N. J. L. (3 Dutcher), 166; *Penn. R. R.* v. *Canal Com.,* 21 Pa. St., 9; *Boughton* v. *Otis,* 21 N. Y., 261; *Shaler & Hall Co.* v. *Bliss,* 27 id., 297; Potter's Dwarris, 247, 255; *Fish* v. *Fisher,* 2 Johns. Cas., 89; *Smith* v. *Moffatt,* 1 Barb., 65; *Millered* v. *Lake Ontario R. R.,* 9 How., 238; *Warner* v. *Hudson R. R. R.,* 5 How. Pr., 454; *Andrews* v. *U. S.,* 2 Story, 203; *Stimson* v. *Pond,* 2 Curtis, 502; *Ferrett* v. *Atwill,* 1 Blatch., 151.)

*George G. De Witt* and *Elbridge T. Gerry,* for the respondents. There was a sufficient organization of the com-

pany to render the trustees liable. (*Childs* v. *Smith*, 46 N. Y., 34, 38, 39.) The fact that the corporation ceased to do business is not an excuse for failure by the trustees to comply with the requirements of the statute as to filing report. (*Sanborn* v. *Lefferts*, 58 N. Y., 179.) The defendants were clearly liable as trustees. (*Easterly* v. *Barber*, 65 N. Y., 252; *Herries* v. *Wesley and Platt*, 13 Hun, 492; *Reed* v. *Keese et al.*, 60 N. Y., 617.) This corporation was never involuntarily dissolved by statute. (2 R. S., 468, § 38; 2 Edm. R. S., 484; 2 R. S., 467, § 58, *seq.*; 2 Edm. Stat., 488.)

Danforth, J. It is settled by repeated decisions applicable to this case that the statute in question (Laws of 1848, chap. 40, § 12), is penal, and not to be extended by construction; that in an action to enforce a liability thereby created, nothing can be presumed against the defendants but that every fact necessary to establish their liability, must be affirmatively proved. (*Garrison* v. *Howe*, 17 N. Y., 458; *Miller* v. *White*, 50 id., 137; *Whitney Arms. Co.* v. *Barlow*, 63 N. Y., 62.)

In view of these rules it is claimed that many errors were committed upon the trial to the prejudice of the defendants, and for their correction the appeal was taken. The debt which lies at the foundation of the action, is alleged by the plaintiffs to have been incurred by "The New York Republican Newspaper Association," and the defendants are sued as its trustees, for a default of the association in omitting to make a report under the above section. In answer thereto the appellants say, that before the time for making the report arrived, not only had the defendant Wesley ceased, by resignation, to be a trustee, but that the association itself had been dissolved. I think the defendants are right in both assertions, and it will therefore be unnecessary to examine any other questions. The defendant Norvell, who does not appeal, seems to have originated the enterprise, and induced Platt and Wesley

to consent upon certain conditions to be trustees with him ; and these three on or before August 6, 1874, signed and acknowledged a certificate of incorporation in due form, certifying among other things that "the capital stock of the association was $500,000, its existence to be fifty years, the number of its trustees, three ; and that Caleb C. Norvell, Edward B. Wesley and Thomas C. Platt, are the names of the trustees, who should manage and conduct its business during the first year." The certificate was filed by Norvell in the secretary of State's office, on the 7th of August, 1874, and a similar one in the office of the clerk, of the city and county of New York, on the 1st day of October, 1874. Neither Wesley, nor Platt, were at any time subscribers to the capital stock, nor stockholders, and they were therefore ineligible to the office of trustee. (Laws of 1848, chap. 40, § 3.) On the 7th of September, 1874, Wesley wrote a letter to his associates Norvell and Platt, in which he says : "Gentlemen: In looking through the law under which the Republic Printing Company, have filed the certificate of organization, I find that I cannot be a qualified trustee unless I am a stockholder. You remember I said to you (Mr. Norvell) that I could not be a subscriber to any of the stock for reasons which I then gave. I therefore resign my place as trustee, hoping, however, it will not cause you any trouble or embarrassment by so doing.

"I will, however, do as I said before, when you get your capital of $500,000 subscribed, and wish my services in any capacity I am capable of filling, devote one year for your benefit to the best of my ability."

A duplicate was sent to each of these persons, and a copy was received by Mr. Norvell, the president, on the day it bore date. The first meeting of the trustees was held on the first day of October, following. At that meeting Mr. Wesley's resignation as trustee was presented and accepted.

George F. Williams consented to accept the office, and as appears by the minutes of the meeting, he was then made trustee in the place of Mr. Wesley, and attended the meet-

ings of the board as trustee on the eighth and twelfth of October, and eighteenth of November, which so far as appears was the last held by the board, or any portion of it. Mr. Wesley never after the seventh of September acted as trustee, nor was he again chosen or appointed to that office. By his resignation the event happened, contemplated by the statute (*supra,* § 3), and the vacancy made thereby was filled. There is no evidence to show that this resignation was not in truth made, and that fact appearing, it put an end to any just claim that a cause of action could be established against him. The reason for the resignation assigned by him in the note to his associates, presented a good reason for his withdrawal, but no reason was necessary. Nor were his motives or intentions in doing so to be litigated or inquired into upon the trial. It was not necessary for him to give notice to the public or these plaintiffs, or any persons other than his associates, of his intention to resign, or of his resignation. The facts established on this point, proved conclusively that Mr. Wesley was not a trustee at the time default on the part of the association to make a report, is alleged to have occurred, and the complaint should have been dismissed as to him. It should be observed that the liability of a trustee does not depend upon the fact that he was such when the debt was contracted, but upon his being a trustee when the default as to filing the report occurred. (Laws of 1848, chap. 40, § 12; *Garrison* v. *Howe,* 17 N. Y., 458; *Boughton* v. *Otis,* 21 id., 261.)

It was therefore error for the trial judge to submit to the jury the questions whether Mr. Wesley had resigned, or whether his resignation was made in good faith. Nor do I perceive that any injustice was done to the plaintiffs by this resignation. As trustee Mr. Wesley was under no liability to the plaintiffs at that time. Upon the plaintiffs' theory the debt was due from the corporation, and whether the persons who thereafter might fill the office should become liable, was contingent upon events not then determined, and which would in no manner depend upon any legal or equit-

able right which the plaintiffs had against Mr. Wesley as trustee.

In the next place; was the association required to make a report in January, 1875? The learned counsel for the appellant has argued with some reason, that the company or association was not in fact incorporated according to the provisions of the act referred to. I have, however, for the purposes of this appeal, assumed the contrary, and that the persons named in the certificate, did upon its filing become "a body politic and corporate," within the meaning of the statute (*supra*). It had a birth, but scarcely more, and its development was very imperfect. The debt in question was contracted before the corporation was formed, Norvell having great expectations as to the success of the projected enterprise, and the plaintiffs confiding in him. But the stock was not subscribed for. Its certificate called for $500,000, but $40,000 only was taken; Wesley had none, nor Platt. Wesley refused early in August, 1874, to have anything to do with the company until Norvell should procure the whole $500,000, with $100,000 part thereof, in hand; and Platt refused to subscribe anything "unless Wesley continued in the enterprise." The parties upon whom reliance was had for subscriptions, did not come forward. The plaintiffs' goods; purchased as for cash, in August and September (most of them before the twenty-third), consisting of type and material for the business of the concern, were not paid for, and they almost immediately began to call on Norvell for payment. Neither Platt nor Wesley were ever called upon; but the plaintiff says the "first number of the newspaper came out October fifth, and the account was then presented; but the clerk could not collect." He went to Norvell with no better success, and on the 9th of December, 1874, Norvell by note in writing excused delay, saying: " I beg your indulgence yet a few days longer, in regard to arrangement for meeting your bill, as promised, early in December. I do not know that I can get to town this week, but hope the business with you can be placed in a definite shape by Monday or Tuesday

next." Nothing was done. The company could not pay. The first number of the paper issued on the fifth of October; it stopped on the fourteenth of December; as one of the plaintiffs' witnesses says : "the cause of its death was want of breath, want of money," and the plaintiff himself says, "after stoppage of the paper in December they wanted us to take it" (type and material) "back. They wanted us to take back the whole, and I refused to." During the time of publication the expenses had been $3,000, and the receipts $600 per week. In December, 1874, judgments were recovered against the association, and in the course of that month as the testimony produced by the plaintiff disclosed (and it was not contradicted), the entire property of the association was sold upon execution. The language of the plaintiffs' witness is : "The material and everything on hand was sold out by a marshal in December through the Marine Court. It was seized immediately after its stoppage on the compositors' claim ; all of the property was sold out by the marshal; he took possession of everything and took a record of everything."

The plaintiffs obtained judgment upon their claim on the 9th of January, 1875, and the execution issued for its enforcement was returned unsatisfied before this action was commenced. Nothing was done by the company, or business transacted by it after the sale by the marshal in December, nor after the fourteenth of that month. From these facts, then, it appears that before the 1st day of January, 1875, every person interested in the enterprise as a corporator had abandoned it. The company had but two trustees qualified, or willing to act; it had no property; it was carrying on no business; it had no means of procuring money; no stock subscriptions, or inducements to offer new subscribers. There was no ability or intention to resume business. Does the statute call for a report under these circumstances ? It requires a company to make a report which shall be published, etc., in the city "where the business of said company is carried on." Taken literally it has no application to a

company which is carrying on no business. Taken in any sense, there seems no object in a report from a company whose property has been exhausted by legal process, and which neither is doing or intending to do any other act in furtherance of the object of its incorporation. Applied to an existing corporation, transacting business, the provisions of this section are beneficial. The report enables persons dealing with such a corporation to determine the credit to which it is entitled, or if a present creditor, whether he shall enforce payment or give further time. None of these considerations can apply here. And for every practical purpose the corporation may, within the principle of a long line of decisions, be deemed to have been dissolved before the arrival of the time when, by statute, a report could be required.

In *Bradt* v. *Benedict* (17 N. Y., 93), it was considered as established that by the rules of the common-law a virtual surrender of the franchise of a corporation might be inferred from its condition, and the manner in which it had conducted its affairs, and that the statute (2 R. S., 463, § 38), declaring that a corporation which for one whole year has remained insolvent, or suspended its ordinary business, shall be deemed to have surrendered its franchises, is cumulative, and not a limitation upon the rule referred to.

In *Slee* v. *Bloom* (19 J. R., 456; 20 id., 669), the question as to liability of stockholders arose under the act of 1811 (chap. 67). The company there referred to was organized in 1814, and its corporate existence was fixed by statute at twenty years. Section seven of the act provided " that for all debts which shall be due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible," to the extent named. After December, 1817, there was no meeting of the trustees, nor any business or act done by the corporation, and on the 1st day of February, 1818, the property of the corporation was sold under execution. In April, 1819, creditors of the corporation sued the stockholders to enforce the

liability created by section seven (*supra*). In behalf of the defendants it was contended that the dissolution contemplated by statute was the dissolution created by lapse of time, the end of its statutory term, or dissolution by legal proceedings. But the court held otherwise, saying : " In point of good sense this corporation was dissolved, within the meaning and intent of the act as regards creditors, when it ceased to own any property, and when it ceased for such a space of time from doing any act manifesting an intention to resume its corporate functions. *The end, being and design of the corporation*, were completely determined. * * * * With respect to the period of dissolution, it appears to me, we may safely say it happened on the 1st of February, 1818, when all the property of the company was sold, for since that time no corporate act has been done."

In *Penniman* v. *Briggs* (Hopkins, 300), the same doctrine was held in regard to another corporation organized under the same act, and whose property had been sold by the sheriff. The chancellor says : " This company has ceased to exist in fact, and the defendants claim for it nothing but a legal or potential existence. A mere omission to exercise a corporate franchise is not a forfeiture of the franchise, or a dissolution of the corporation. But this is not merely an omission to exercise corporate rights. Besides the omission to use the corporate powers, here is an entire inability to exercise them by reason of a total want of funds. The omission to act, and an inability to act are facts which attend each other in this case." To the same effect is *Bank of Poughkeepsie* v. *Ibbotson* (24 Wend., 473), where NELSON, Ch. J., says, referring to the same statute : " It has been repeatedly held that the dissolution here spoken of in order to subject the shareholder, may be shown short of judicial proceedings for that purpose ; having ceased to act, and being without funds, and indebted, it is to be deemed dissolved so far as to give the remedy to the creditor."

The principle upon which these decisions stand, is applicable to the case before us. Under the act of 1811, the liability

of the stockholder begins upon dissolution, and that occurs the moment the corporate property is disposed of, and the corporation ceases to act. Under the act of 1848, the obligation of the company to report as to its affairs, ceases upon the happening of the same event, viz.: upon dissolution effected by the same causes, for it then is carrying on no business, and is deprived of the means of carrying it on. And as there can be no default of the company, so there can be no liability of the trustees on account of such default. Nor is there, after such dissolution, need of a report. It is required in order that the public may be protected, but as is said by FOLGER, J., in *Jones* v. *Barlow* (62 N. Y., 208), " the information is not by the intent of the act deemed of use to those who have become creditors of the company so much as to those about to." And it is quite apparent that a corporation situated as this one was would attract no creditors. The line of argument and decision adopted in the cases above cited, has been followed in cases arising under the act of 1848 (*supra*).

In *Garrison* v. *Howe* (17 N. Y., 458), the plaintiff claimed that the defendant was liable as a trustee, under section twelve, because the company had not as he alleged made the report required by that section. It appeared that a report was made in January, 1852; in March, 1852, the company discontinued business, and all its property was sold under execution, and this fact seems to have been regarded as sufficient to dispense with any subsequent report, and in the following cases this was distinctly held.

In *The Huguenot National Bank of New Paltz* v. *Studwell* (74 N. Y., 621), it was held that on the appointment of a receiver of a manufacturing company, the corporation was so far dissolved, that thereafter the duty was no longer upon the trustees to make the annual report. There the receiver was appointed during, and before the expiration of the twenty days named in the statute (§ 12, *supra*).

In *Losee* v. *Bullard* (79 N. Y., 404), the action was against a trustee of a manufacturing corporation, organized under

the act of 1848, to enforce the liability imposed by the same section. The corporation ceased to do business in 1865, and contracted no debts after that time ; it suspended its ordinary business and never had resumed it. The default was alleged to have occurred after that time. It was held that the corporation was virtually abandoned, and broken up, if not technically dissolved, and that the statutory requirement had no application.

In *Bonnell* v. *Griswold*,* decided February 24, 1880, the company was adjudged a bankrupt in November, 1870; on the 3d of January, 1871, the entire property passed to the assignee in bankruptcy, and the company ceased to do business. In an action against a trustee this court held that no report was necessary in 1871.

In none of these cases had the corporation been dissolved by proceedings for that purpose, and in none were the facts showing a practical or virtual dissolution stronger than in the one before us. With the corporation in question it was a struggle for existence from the beginning. It was destitute of money, and of credit. The enterprise upon which it embarked, was uncertain, depending for its success upon the personal efforts of its projectors, and when it failed under the circumstances above disclosed, the failure was final. The case comes within the principle upon which the above decisions were made, and within the rule suggested in *Brinkerhoff* v. *Brown* (7 Johns. Chy., 217), for its suspension was not temporary, but complete. The corporation was abandoned by its corporators, and had neither "the moral or legal capacity to increase its subscriptions, or call in more capital, or to resume its business."

*Bradt* v. *Benedict* (*supra*) and *Sanborn* v. *Lefferts* (58 N. Y., 179), illustrate the same principle, and are not exceptions to the rule we apply in this case. In the first, the stockholder was held not liable under section seven of the act of 1811, while in the other the trustees under section twelve, of the act of 1848, were held liable, but in both

*Ante p.* 128.

instances, for reasons which have no foundation in the facts of this case. In *Bradt* v. *Benedict,* the corporation, although insolvent, still possessed its real estate and machinery, amounting to over $40,000, and it was not shown that its stock and materials had been disposed of; there was therefore no dissolution of the corporation. In *Sanborn* v. *Lefferts,* the corporation was in the same condition. It transacted business after the expiration of the time limited by the statute for the making of the report. The defendant participated in it, and the corporation was possessed of property. It was not dissolved.

The learned trial court therefore in view of the circumstances of this case, and the law which we deem well established, erred in holding as matter of law, that the fact that the corporation was bankrupt, and had ceased to do business, did not relieve its trustees from the obligation of the statute, to make and file a report.

The judgment of the General Term of the Supreme Court, and the judgment of the Special Term, so far as appealed from, should be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgment accordingly.