WM. H. KIRKLAND, Appellant and Respondent, *v.* SAMUEL K. KILLE, Impleaded, etc., Appellant and Respondent.

Bonds issued by a manufacturing corporation, and to the knowledge of the holder diverted from the purpose for which they were intended and authorized, are not, in the hands of such holder, a debt against the company authorizing the maintenance of an action under the General Manufacturing Act (§ 12, chap. 40, Laws of 1848) against its trustees for a failure to make and file an annual report.

Where a corporation organized under said act has never, in fact, commenced business, and, before the time prescribed for making such a report has elapsed, the object for which it is formed becomes impossible for it to accomplish, and there is neither ability nor intention on its part at any time to prosecute its business, it is not required to make such report, and its trustees are not liable to creditors, because of its failure so to do.

(Argued May 7, 1885; decided June 16, 1885.)

THESE are cross-appeals from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made January 17, 1883, which affirmed

a judgment in favor of plaintiff, entered upon a verdict which was rendered pursuant to directions of the court.

This action was brought by plaintiff, an alleged creditor of the Globe Smelting Company, a corporation organized under the General Manufacturing Act, to recover against defendants, trustees of the company, the amount of the debt, because of failure on their part to make and file the annual report required by the act for the year 1876.

The alleged indebtedness was certain bonds issued by the company.

The material facts are stated in the opinion.

*Samuel Hand* for plaintiff. The company had a right to buy the property owned by Jones and issue its stock in payment therefor. And this stock was full paid under the statute. (Act of February 17, 1848, § 10, subd. 1, as amended by chap. 333 of the act of 1853; *Lake S. I. Co.* v. *Drexel*, 90 N. Y. 87; *S. Express Co.* v. *W. N. C. R. R. Co.*, 99 U. S. [9 Otto] 199.) A corporation, in the absence of any statutory restriction forbidding it, has a right to purchase its own stock and hold and reissue the stock so purchased. (*City Bank* v. *Bruce*, 17 N. Y. 507; *C. P. & S. W. R. R. Co.* v. *Marseilles*, 84 Ill. 145, 643; *L. S. I. Co.* v. *Drexel*, 90 N. Y. 93; *State Bank* v. *Fox*, 3 Blatchf. 434; *Otter* v. *Brevoort P. Co.*, 50 Barb. 256.) The power to contract debts is one of the common-law powers of a corporation and inherent in its nature, and a corporation may deal precisely as an individual can, except where restricted by charter; and it may give a time engagement to pay a debt contracted by it in any form which does not come within the prohibition of any statute. (*Curtis* v. *Leavitt*, 15 N. Y. 9; *Mott* v. *Hicks*, 1 Cow. 513; *Moss* v. *Averill*, 10 N. Y. 449; *Barry* v. *Mer. Ex. B'k*, 1 Sandf. Ch. 280; *Feeney* v. *Ins. Co.*, 2 Robt. 599; *R. R. Co.* v. *Lighthall*, 5 Abb. [N. S.] 462; *Commonwealth* v. *Pittsburg*, 41 Penn. St. 278.) The statute making trustees liable for debts implies the power of the corporation to contract them, and the power to mortgage implies an ageeement to pay *in futuro*. (Gen.

Mfg. Act of February 17, 1848, §§ 12, 23, 24.) Jones, by exchanging stock to the amount of $100,000 for bonds to the same amount, parted with an absolute interest in the property of the corporation in exchange for a mere lien upon it *pro tanto*, and to that extent the transaction was a benefit to the company and a detriment to him. This is sufficient consideration to uphold the bargain. (*Waydell* v. *Luer*, 3 Den. 418; *Miller* v. *Drake*, 1 Caines, 46.) So long as no actual fraud is committed upon the stockholders or the public, the action of the trustees in the exercise of their discretion will be presumed to be rightful and will not be interfered with by the court. (*Bk. of U. S.* v. *Dandridge*, 12 Wheat. 64; *Chautauqua Bk.* v. *Risley*, 19 N. Y. 369; *Nelson* v. *Eaton*, 26 id. 410; *Kent* v. *S. M. Co.*, 78 id. 159.) Plaintiff was a *bona fide* holder for value of the $6,500 of bonds as to which the complaint was dismissed. (*Duncombe* v. *N. Y. H. & N. R. R. Co.*, 84 N. Y. 190; *Adams* v. *Mills*, 60 id. 533.) In an action under section 12 of the statute, the trustees cannot avail themselves of a defense not personal to them, but going to the foundation of the claim and cause of action against the corporation which would not be available in its favor. (*Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Maher* v. *Chicago*, 38 Ill. 266.) Plaintiff claims nothing under the mortgage; it is merely collateral security, and its invalidity would in nowise affect the validity of the bonds — the principal debt. (*Phila. R. R. Co.* v. *Lewis*, 33 Penn. St. 33.) The claim that the defendants are not liable for debts except such as were contracted when they were trustees is wholly untenable. (*S. & H. I. Co.* v. *Bliss*, 27 N. Y. 297; *Reed* v. *Keese*, 60 id. 616; *Denning* v. *Puleston*, 55 id. 655; *Nimmons* v. *Hennion*, 2 Sweeny, 663.) The claim that the trustees should be excused for the failure to file their report by reason of the failing circumstances of the company and its ceasing to do business cannot be sustained. (*Sanborn* v. *Lefferts*, 58 N. Y. 179; *Cary* v. *S. V. M. Co.*, 2 Hun, 110; *Chandler* v. *Hoag*, id. 613.) The defendant Kille is estopped from questioning the validity of any of the bonds held by the plaintiff. (*Hatha-*

*way* v. *Payne*, 34 N. Y. 109; *Plumb* v. *C. Ins. Co.*, 18 id. 394; *Hamlin* v. *Sears*, 82 id. 332; *Moss* v. *Averill*, 10 id. 449; *Sheldon, etc., Co.* v. *Eickmeyer*, 90 id. 607; *Kent* v. *Q. M. Co.*, 78 id. 159; *Rapallee* v. *Stewart*, 27 id. 310; *Van Hook* v. *Whitlock*, 26 Wend. 43; *Dezell* v. *Odell*, 3 Hill, 215; *Maher* v. *Chicago*, 38 Ill. 266; *Moran* v. *Com'rs*, 2 Black, 722; *W. C. Co.* v. *Hathaway*, 8 Wend. 483; *Society for Savings* v. *New London*, 29 Conn. 174; *Allen* v. *Roosevelt*, 14 Wend. 103; *Martin* v. *Sherman*, 2 Sandf. Ch. 341; *Lee* v. *Porter*, 5 Johns. Ch. 268.)

*Thomas H. Hubbard* for defendant Samuel K. Kille. The provision of the General Manufacturing Act (Laws 1848, chap. 40, § 12), as to liability of trustees for a failure to make and file an annual report, should be reasonably interpreted so as to effect its purpose. (*Garrison* v. *Howe*, 17 N. Y. 458; *Boughton* v. *Otis*, 21 id. 261; *S. & H. Q. Co.* v. *Bliss*, 27 id. 297.) The debt on which plaintiff sues was neither contracted during a default in making a report (17 N. Y. 466), nor while defendant Kille was a trustee (27 id. 299; 17 id. 466). The court erred in sustaining the refusal to rule that the bonds of the company are not a debt within the meaning of the statute. (*Adams* v. *Mills*, 60 N. Y. 533.) The corporation had been dissolved before the time, when, by the statute, a report could be required. (*H. N. Bk.* v. *Studwell*, 74 N. Y. 621; *Losee* v. *Bullard*, 79 id. 404; *Bonnell* v. *Griswold*, 80 id. 129; *Bruce* v. *Platt*, id. 379; *Jones* v. *Barlow*, 62 id. 208; 80 id. 388.) The court below was right in dismissing the plaintiff's complaint as to the $6,500 of bonds. (2 R. S. [6th ed.] 504–507, §§ 38, 40, 49; *Douglass* v. *Ireland*, 73 N. Y. 100.) The court was right in deciding that the plaintiff could not recover upon the $3,000 of bonds given him in payment for his salary of $1,500. (*Adams* v. *Mills*, 60 N. Y. 533.)

DANFORTH, J. The plaintiff proved that the bonds in question were part of a series of first mortgage bonds issued by the Globe Smelting Company, and authorized by its trustees

for the sole purpose " of borrowing money in order to success-fully conduct the business for which it was incorporated." It appeared that the bonds were to the plaintiff's knowledge diverted from the purpose for which they were intended, and for that reason the court below denied a recovery according to the prayer of the complaint, but against the objection of the defendant directed a verdict in favor of the plaintiff for $1,500 and interest. Both parties appealed to the General Term; the plaintiff because he was not permitted to recover according to his claim, and the defendant because the complaint was not dismissed. We agree with the courts below so far as they went against the plaintiff, and as the case is now presented, discover no ground on which even his partial success can be approved.

The complaint states a single cause of action — a debt due from the company to the plaintiff as holder and owner of the bonds. He took part in their creation, and, however honestly conceived, they appear to have been unavailing in any legiti-mate business of the corporation, and serviceable thus far only as a pretext for subjecting its trustees to a penalty imposed by statute (Laws of 1848, chap. 40, § 12), for the benefit of cred-itors whose debts, fairly contracted, were enforceable against the company. The recovery is placed, not upon the debt named in the complaint, but upon an alleged indebtedness of the company for the plaintiff's salary as its president. The evidence disclosed that $3,000 of the bonds were turned out to him in payment, and to the extent of that salary the trial court held the defendant liable to the plaintiff. The defendant was not brought into court to answer such a claim. Concern-ing it there was no allegation, and it may well be that injustice has been done by its allowance. (Code, § 1207; *Bank* v. *Kohn*, 85 N. Y. 189; *Newdecker* v. *Kohlberg*, 81 id. 296.) But I do not need to go into that question. The circumstances upon another trial, if one is had, may be different, and now for other reasons the defendant's appeal must prevail. Even if the plaintiff is regarded as a creditor having a valid debt against the corporation, he has failed to bring the case within the statute upon which he

relies, and by which it is enacted " that every such company shall annually, within twenty days from the 1st day of January, make a report which shall be published" in the place " where the business of the company is carried on" * * * " and filed in the office of the clerk of the county where the business of the company shall be carried on." Nor is it necessary to discuss with any minuteness the cases which have given construction to its provisions. They were referred to with much detail in *Bruce* v. *Platt* (80 N. Y. 379), and result in this, that when the condition of the company is such that the end and object for which it was formed are destroyed, and there is neither an ability nor intention on its part at any time to farther prosecute its business, it is no longer required to make the report mentioned in that section. In other words, when these events happen it ceases to be a company " carrying on business," and the direction of the statute has no application. This proposition was presented to the trial court as ground for dismissing the complaint, and it was error to disregard it. The request was justified by the evidence.

Although formed in April, 1874, the company seems at no time to have had existence, except in contemplation of law. Its organization was avowedly for the purpose " of carrying on a mining, smelting and metallurgical business, to accumulate, conduct and supply water for mining purposes." Its capital was fixed at $500,000, but none was paid in nor subscribed. The whole was transferred in payment for mining property, smelting works, water-works and real estate once owned by the " Ingot Mining Company," but it became extinct and was at this time in the hands of one Jones. He received the entire stock of the new company and deeded those things to it The plaintiff and his son were active projectors of the enterprise; one or the other, as evidence might be credited, receiving under previous arrangement a large amount of these first mortgage bonds of the new company for services in getting together, as one testified " five or six reputable and respectable gentlemen who would file a certificate of incorporation." This was done by the plaintiff and others on

the 18th of April, 1874, and on the 20th of that month the plaintiff was chosen president. His salary was fixed at $3,000 per annum. On the 23d of May, the trustees resolved to issue the bonds already referred to, secured by a first mortgage on the entire property of the company, for the purpose above mentioned. The plaintiff, as president, executed the bonds and mortgage, and on the 3d of June the trustees resolved to purchase of Jones $100,000 of the company's stock, and pay therefor $100,000 of the first mortgage bonds just referred to. This transaction was completed, and of these bonds, thirteen, amounting to $6,500, came to the plaintiff and form part of his cause of action. The company received no money for them. He continued president for six months. During that time the property was not worked, but, as he says, "efforts were made to secure a superintendent." On the 17th of July, 1874, a consulting engineer was employed to ascertain and report what was the best course to pursue in developing the property. On the 20th of October, 1874, at a meeting of the trustees, it was stated that immediate action was required to protect the property of the company and "pay expenses already contracted on that account;" that $4,000 would be sufficient for that purpose, and that could be had on a pledge of the company bonds, as collateral to a loan, at ten per cent per annum. The secretary tendered his resignation and asked that in providing funds, enough be raised to pay his salary, then amounting to $600, and his bill of $50 for services in organizing the company. The loan was authorized, "the proceeds to be applied to protecting the property of the company, in redeeming property already pledged and payment of expenses incurred." The plaintiff then resigned as president; so did Bissell, one of the trustees; but all these resignations were laid upon the table, and both president and secretary announced "that for any further services rendered they should make no charge for salary, and although only $1,500 was owing to the plaintiff, the company gave to him and he received bonds to the amount of $3,000 in payment out of $150,000 before

authorized. These constitute the other part of those set out in the complaint.

The defendant came into the board of trustees in October, 1874. Proceedings were begun for the foreclosure of the mortgage given to secure the $150,000 of bonds — precisely when does not appear, but they were consummated by a decree so that the mortgaged premises were advertised to be sold December 29, 1875, and after adjournment actually sold in February, 1876. · There is testimony from Carnaghan, who succeeded Kirkland as president, that "the company incurred no debts after November, 1875; it did no business after November, 1875; every thing that was done by the company or in connection with it after about the middle of January, 1875, was in connection with the foreclosure proceedings that had been begun about that time, and after that, all that was done was to foreclose that mortgage and sell out the property of the company."

In November, 1875, salaries ceased, and after that time at any rate no meeting of the trustees was held nor any business transacted.

Not only was there no evidence that any other than formal acts were performed by the company in furtherance of the objects of its organization, but it was proven without contradiction "that it never got into business," "that it never conducted or carried on a mining, smelting or metallurgical business, or that of accumulating, storing or conducting a supply of water for mining purposes." In short "that it never performed any part of the business for which it was incorporated." The bonds were not negotiated, and even the preliminary work of examination of the property by the consulting engineer, and "assessment work," that is, work done on the claim to protect the title, ceased in the early part of 1875. "It never dug out any ore with a view to smelting." The last of any kind was in June, 1875. There was at no time a superintendent. Under these circumstances we think no report in 1876 was required from the company. It never had the material

capacity to do business.   Even its effort to acquire it ceased, and its intention to do so was given up in 1875.

The statute invoked by the plaintiff has often been declared to be highly penal, and not to be extended by construction. We think the case made by him comes neither within its phraseology nor its intent.   It follows that the plaintiff must fail on his appeal, and the defendant succeed.

The judgment of the court below should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.