GANS ET AL., RESPONDENTS, *v.* SWITZER ET AL., APPELLANTS.

CORPORATION— *Liability of trustees— Penal statutes.* —Section 460, chapter xxv., fifth division of the Compiled Statutes, making the trustees of a corporation, organized under the provision of said chapter, jointly and severally liable upon a failure to file an annual report for all debts of the company then existing, and for all that shall be contracted before such report shall be made, though a penal statute and requiring a strict construction, cannot be so construed as to excuse such trustees from liability for debts contracted prior to a default.

CORPORATIONS— *Defense — Dissolution — Annual report.* —In an action against the trustees of a corporation to charge them with individual liability for failure to file an annual report, it was alleged in defense that before the time for filing such report the corporation was insolvent and had entirely abandoned its business; that all its property belonged to one of its trustees, having been delivered to him in satisfaction of an indebtedness; and that for a period of two months no officer or trustee had exercised any corporate act or function, and that there was no intention to resume the business of said corporation. *Held*, that the acts set forth did not dissolve the corporation and constituted no defense to the action.

SAME— *Dissolution.* —The laws of this State relating to corporations contemplate that the corporate existence of a corporation organized thereunder shall continue until disincorporated by order of the court, or dissolved by limitation, or until its franchise be forfeited for cause through judicial proceedings, and such corporations are not dissolved by abandonment or non-user of their franchises.

*Appeal from First Judicial District, Lewis and Clarke County.*

Plaintiff's motion for judgment on the pleadings was granted by HUNT, J.

*Casey & Smith*, and *Fletcher Maddox*, for Appellants.

It is apparent from the answer that in September, 1889,

the corporation, of which the appellants were trustees, had practically abandoned all functions of the corporation, all its operations had proved a failure, it was unable to manufacture any brick; that it had entirely abandoned its business, and that the same was practically suspended, its means were exhausted, and its property and machinery had been turned over to Jacob Switzer in satisfaction of debts of the corporation to said Switzer, which the corporation were unable to pay, and that thereafter no officers or trustees of said company exercised any corporate act or function to resume its business, and said Switzer purchased all property of said company, and the same belongs to him irrevocably, and for these reasons the trustees of said corporation were not required to file any annual report. We submit that this answer states a good defense to the action. (Wait on Insolvent Corporations, § 585; *Bruce* v. *Platt,* 80 N. Y. 379, and cases cited; *Bradt* v. *Benedict,* 17 N. Y. 93; *Slee* v. *Bloom,* 19 Johns. 456, 477; *Slee* v. *Bloom,* 20 Johns. 669; *Penniman* v. *Briggs,* Hopk. Ch. 300; *Bank of Poughkeepsie* v. *Ibbotson,* 24 Wend. 473; *Huguenot Bank* v. *Studwell,* 74 N. Y. 621; *Losee* v. *Bullard,* 79 N. Y. 404.)

*F. N. & S. H. McIntire,* for Respondents.

When a corporation is once formed, the trustees are liable for neglect of duty until a final dissolution. Mere insolvency, ceasing to do business, or sale of its property does not dissolve the corporation, or relieve trustees from liability for neglect of duty. (*Sanborn* v. *Lefferts,* 58 N. Y. 179; *Chamberlin* v. *Huguenot Manuf. Co.* 118 Mass. 532; *First Nat. Bank* v. *Hingham Manuf. Co.* 127 Mass. 563; *Hill* v. *Fogg,* 41 Mo. 563; *Carey* v. *Schoharie M. Co.* 2 Hun, 110.) The ownership of property is not essential to the existence of a corporation. (*Sullivan* v. *Triunfo Min. Co.* 39 Cal. 468.) This corporation was legally in existence in September, 1889, and failure to file the report is inexcusable. There are two ways of dissolving a corporation in Montana, by neither of which had the Helena Pressed Brick Company been dissolved: (1) Compiled Statutes, page 740, section 488. (2) By limitation. The answer presented no defense to the action. The rule is universal and well

settled that the dissolution of a corporation, or forfeiture thereof, cannot be alleged in a collateral proceeding. An individual who may be sued upon his dealings with a corporation, a stockholder sued on his subscription, or a trustee on his statutory liability, has no standing which enables him to defend the suit, on the ground that the corporation has lost its powers. (*Dyer* v. *Walker*, 40 Pa. St. 157; *Baker* v. *Backus, Adm'r*, 32 Ill. 79; *Sewall's F. Bridge* v. *Fisk*, 23 N. H. 171; *Pearce* v. *Olney*, 20 Conn. 544; *Johnson* v. *Bentley*, 16 Ohio, 97; *Stoops* v. *Greensburgh & B. P. Co.* 10 Ind. 47; *State Bank* v. *Merch. Bank*, 10 Mo. 123; *Cahill* v. *Kalamazoo Ins. Co.* 2 Doug. [Mich.] 124.) Even after a corporation is legally dissolved the trustees have certain duties to perform that we have never heard that the trustees of this corporation made any pretense of doing. (Comp. Stats. p. 740, § 489.)

BLAKE, C. J.— This appeal has been taken from the judgment of the court below, which was entered upon the pleadings. The complaint alleges, in substance, that the Helena Pressed Brick Company was a corporation, which had been organized under the laws of the Territory of Montana, and had its principal place of business in Helena, and was doing business in the counties of Lewis and Clarke and Jefferson; that Switzer *et al.*, the defendants, were at all times the trustees of the corporation, and discharged the duties of the office; that the corporation was indebted June 12 and 21, 1889, at said Helena, to various persons, in certain sums, which are enumerated, and the plaintiffs by purchase acquired these claims; that said accounts have not been paid.

"And the plaintiffs further say that the said corporation, the Helana Pressed Brick Company, did not, within twenty days from the first day of September, 1889, make, and have not, at any time since said date, made, a report stating the amount of its capital stock and of the proportion of the same actually paid in, and the amount of the existing debts of the said company at the period last aforesaid, or at any period subsequent thereto; nor did said company cause any such report to be signed by its president, and a majority of its trustees, nor to be verified by the oath of its president, nor by the oath of its secretary, nor to be

filed in the offices of the recorder of Lewis and Clarke and Jefferson counties, nor to be published in any newspaper printed and published in either of said counties; and the said defendants, and also said company, wholly neglected and refused, during said period of twenty days, from September 1, 1889, and have ever since neglected and refused, to cause such report to be made, signed, and verified, filed, printed, and published in conformity with the provisions of section 460, fifth division, page 728 of the Compiled Statutes of Montana Territory, and they, the said company, and the said defendants, as such trustees, have at all times neglected and refused, and still do neglect and refuse, to comply with the provisions of the said statute."

The answer denies "that, at the times mentioned in plaintiff's complaint, the Helena Pressed Brick Company was a corporation existing or doing business under or by virtue of the laws of Montana Territory, having its principal place of business in the city of Helena, Lewis and Clarke County, Montana Territory, or any other place, or that it had any place of business at all, or that it was doing business in Lewis and Clarke County and Jefferson County, or any other place."

The answer alleges "that on or about July 13, 1888, the said the Helena Pressed Brick Company was duly incorporated under the laws of Montana Territory, and commenced doing business in the counties of Lewis and Clarke and Jefferson, in said Territory; (2) that on about December 14, 1888, the said corporation was solvent, and that thereafter said corporation was at no time solvent; (3) that in the month of April, Jacob Switzer, Albert Kleinschmidt, Fletcher Maddox, Frank L. Sizer, and G. U. Hallett, were trustees of said corporation; (4) that at said time, namely, in .the month of April, 1889, the said the Helena Pressed Brick Company were involved in large pecuniary · losses and liabilities, and were unable to pay its debts; . . . . that the enterprise of manufacturing brick at their yards had proved an entire and hopeless failure, and the company was at such time hopelessly insolvent; that at said time, July 15, 1889, said company executed a note and mortgage to Jacob Switzer for $11,192.05, due by it to him. . . . . Its means at said date of carrying on business were exhausted, and it had turned over to said Jacob Switzer all its property and machin-

ery, so that he might, by some possible means, work out from its property and the conducting of the same some portion of the amount due him. At this time the corporation was entirely abandoned, and all profits or losses of the company in its business were at the profit or loss of said Jacob Switzer, and no one else. That thereafter no officers or trustees of said company exercised any corporate act or function in the business of said corporation, and thereafter manifested no intention to resume business thereof, but abandoned same entirely, and said Switzer purchased all property of said company thereafter, and the same belongs to him irrevocably."

The complaint was filed September 24, 1889, and prayed for judgment for said sums against the said trustees, the appellants herein. No replication was made to the answer.

The section of the statute which is referred to in the complaint is as follows: "Sec. 460. Every such company shall, annually, within twenty days from the first day of September, make report, which shall be published in some newspaper published in the town, city, or village, or if there be no newspaper published in said town, city, or village, then in some newspaper published nearest the place where the business of said company is carried on, which shall state the amount of capital, and of the proportion actually paid in, and the amount of existing debts, which report shall be signed by the president and a majority of the trustees, and shall be verified by the oath of the president or secretary of said company, and filed in the office of the clerk of the county where the business of the company shall be carried on; and if any of said company shall fail to do so, all the trustees of the company shall be jointly and severally liable for all debts of the company then existing, and for all that shall be contracted before such report shall be made. No liability shall attach to any trustee, or board of trustees, by virtue of the provisions of this section, for a failure to cause to be published in a newspaper the report in this section mentioned, if, within the time herein mentioned, said trustee, or board of trustees, or company, shall annually cause said report to be filed in the office of the county clerk and recorder of the county in which the business of the said company is carried on, as declared in its certificate of incorporation." (Comp. Stats. div. 5.)

The complaint states facts which are sufficient to establish the obligation under the statute of the trustees of the Helena Pressed Brick Company to pay its indebtedness. Does the answer plead a defense which shields the appellants from this liability? The question is presented to this court for the first time, and the vast number and manifold character of the corporations within the State, and the conflict in the decisions upon some of the propositions which are relevant to the inquiry, demand a careful review of the authorities.

It is the general rule that this law is penal, and must be construed strictly. (*Providence Steam Engine Co.* v. *Hubbard*, 101 U. S. 191; *Chase* v. *Curtis*, 113 U. S. 457.) Mr. Morawetz, in his valuable treatise on Private Corporations, considers the subject, and makes the following appropriate comments: "It is not always quite clear what the courts mean to express by saying that statutes of this character are 'penal'; and that they impose upon the directors a 'penal liability.' . . . . Nor is the liability of the directors under these statutes penal in the sense in which the word 'penal' is used in criminal law; it is not a penalty or fine imposed by the State for the infraction of a public law. . . . . The statutes imposing this liability establish a new rule of private right, a rule which, although unknown to the common law, may be founded on sound principles of justice and expediency. The only reason why this liability is called 'penal' appears to be that it does not exist at common law, and is neither created by contract, nor given as compensation for a direct and immediate wrong done by the directors to the creditors of the company." (Vol. 2 [2d ed.], § 908.) Even with this understanding, "in construing penal statutes, we must not, by refining, defeat the obvious intent of the legislature." (Potter's Dwarris on Statutes. 247.) The law before us is clothed in clear and concise terms, and we think that the same end will be attained by the application of any canon of interpretation. There should be no difficulty in carrying out "the true intent and meaning of the legislative assembly." Under certain conditions the statute, in effect, declares that the trustees of the Helena Pressed Brick Company "shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made."

There are no exceptions in this clause, and there does not appear to be any obscurity in the scope of the liability of the trustees, if the words "shall be understood and construed according to the approved and common usage of the language." (Comp. Stats. div. 5, § 202.)

There has been no change in the board of trustees of the Helena Pressed Brick Company since its organization. The appellants were its officers when the debts mentioned in the pleadings were contracted, and did not publish or file the annual report in 1889, or comply in any manner with the requirements of the statute *supra*. It was adjudged in *Steam Engine Co.* v. *Hubbard, supra,* that the liability of the president of a corporation does not extend to debts which were contracted before the period when• he neglected or refused to make the certificate authorized by law, and remained unpaid. This deduction followed the phraseology of the statute of the State of Connecticut, which was decisive of the case, and provides that this officer shall be liable by reason of his default "for all debts of such corporation contracted during the period of such neglect or refusal." In this respect, the laws of the State of New York are like the section *supra*, and Mr. Justice Clifford, in the opinion, in *Steam Engine Co.* v. *Hubbard, supra,* says: "Marked differences exist between the provisions of the New York statute and those of the State of Connecticut, the latter being much less stringent than the former. By the New York law, the duty of making the annual return is required of the corporation itself, and the penalty for neglect is imposed upon the trustees who are intrusted with the management of its affairs. Consequently, it is a corporate duty, and being such, each succeeding board is bound to perform it if it has been neglected by their predecessors. Unlike that, the duty to deposit the certificate under the Connecticut statute is devolved on the president and secretary in terms which show that a new president does not inherit the consequences of neglect of duty or pecuniary liability from his predecessor in office. He is made liable for his own neglect and not for that of a prior officer, as clearly appears from the closing sentence of the penal section. In New York the trustees, upon default, are made liable for all the outstanding debts of the corporation, whenever contracted; but in Connecticut the

president and secretary are liable only for debts contracted during the period of such neglect or refusal." In *Miller* v. *White*, 50 N. Y. 139, this statute was construed by Mr. Justice Peckham, who said: "It is absolute that the trustees shall be liable for all the debts of the company, if the report be not made, no matter by whose default. If one of the trustees did all in his power to have it made, yet if the president, or a sufficient number of his co-trustees to constitute a majority, declined to sign it, or if the president and secretary declined to verify it by oath, the faithful trustee seems to be absolutely liable, as well as those who refuse to do their duty." (See, also, *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Knox* v. *Baldwin*, 80 N. Y. 610.) Some expressions may be found in the cases which discuss the effect of the resignation of a trustee upon his official acts, that appear to qualify this interpretation of the statute, which defines the liability for the payment of the indebtedness of the corporation. But, as we have seen, the trustees of the Helena Pressed Brick Company did not resign, and no questions of this nature arise upon this hearing. We readily accept the legal principles which have been laid down, and hold that they reiterate the plain intent of the law regarding the responsibility of the officers of this corporation.

The main ground of the defense, which is set forth in the answer, has been the salient point of dissension. It is insisted that the Helena Pressed Brick Company, in September, 1889, had practically abandoned its functions; that its operations in manufacturing brick had resulted in financial disasters; that the business had been abandoned; that its means had been exhausted, and all the property had been delivered to Switzer in satisfaction of debts which could not be paid, and that the same belonged to him irrevocably; that since July, 1889, no officer of the corporation had discharged any duty; and that, under these circumstances, the trustees were not obliged to file or publish the annual report in 1889.

The authorities of the State of New York have repeatedly asserted the soundness of this position. The leading case of *Bruce* v. *Platt*, 80 N. Y. 379, reviews the cases which have been decided in her courts, and demonstrates that this doctrine, which was maintained in 1822, in *Slee* v. *Bloom*, 19 Johns. 456,

has been consistently upheld therein. The reasons which underlie these decisions are succinctly given in *Kirkland* v. *Kille*, 99 N. Y. 395, by Mr. Justice Danforth, who approves *Bruce* v. *Platt, supra,* and says: "When the condition of the company is such that the end and object for which it was formed are destroyed, and there is neither an ability nor intention on its part at any time to further prosecute its business, it is no longer required to make the report mentioned in that section. In other words, when these events happen it ceases to be a company 'carrying on business,' and the direction of the statute has no application."

The liability of the appellants is a consequence of the failure or omission to discharge a trust enjoined by law. Their authority, and the formation and perpetuation of the Helena Pressed Brick Company, depend upon the statute of the State. The legislation relating to corporations contemplates that these bodies shall use and enjoy their privileges until their existence is legally terminated. They can be disincorporated by the order of the District Court, upon the hearing of a petition which has been duly presented. (Comp. Stats. div. 5, § 488.) They can be dissolved by the limitation of their term in the articles of incorporation. Their franchises can be forfeited for various causes through judicial proceedings. (*Territory* v. *Virginia Road Co.* 2 Mont. 96.) In the eyes of the statute, however, the rights of the trustees continue after these events, and they are expressly empowered "at the time of dissolution" to be the active officers of the corporation for many purposes, which are defined. (Comp. Stats. div. 5, § 489.)

The acts which are specified in the answer did not dissolve the Helena Pressed Brick Company, or extinguish its charter, or remove from office the trustees. Chancellor Kent writes: "But the old and well-established principle of law remains good as a general rule, that a corporation is not to be deemed dissolved by reason of any misuser or non-user of its franchises, until the default has been judicially ascertained and declared." (2 Kent Com. 312.) In *De Camp* v. *Alward*, 52 Ind. 473, Mr. Chief Justice Downey says, in the opinion: "We do not regard the act of the corporation in assigning its property to a trustee for the payment of the debts of the corporation, etc., as a sur-

render of its franchises as a corporation, and as working a dissolution of the corporation. A corporation may cease to do business, sell or assign its property for the payment of its debts, etc., and yet not cease to be a corporation." In *Rollins* v. *Clay*, 33 Me. 137, the court observes that "a corporation is not dissolved by ceasing to exercise its powers; nor because its stockholders and directors may consider it to be 'defunct.'" In *Reichwald* v. *Commercial Hotel Co.* 106 Ill. 451, Mr. Justice Sheldon says, in the opinion: "The effect of this transfer of all the hotel property no doubt was to terminate the business of the corporation; but that was not the necessary effect. It is entirely clear, upon the authorities, that the disposal of all the property of a corporation has not the effect to end or dissolve the corporation." (See, also, *Boston Glass Manufactory* v. *Langdon*, 24 Pick. 49; *Buell* v. *Buckingham*, 16 Iowa, 296; *Moseby* v. *Burrow*, 52 Tex. 403; *Kansas City Hotel Co.* v. *Sauer*, 65 Mo. 288; *New Jersey Zinc Co.* v. *New Jersey Franklinite Co.* 13 N. J. Eq. 335; *Sullivan* v. *Triunfo Min. Co.* 39 Cal. 468.)

Mr. Chief Justice Shaw held, in *Coburn* v. *Boston P. M. & M. Co.* 10 Gray, 243, that a corporation was not extinguished by proceedings in insolvency, and concluded with the remark that, "if the legislature had so intended, they would have so declared." This rule is applicable to the statute under investigation. It has been shown that the Helena Pressed Brick Company is a valid corporation, and in the full enjoyment of all the powers it originally possessed, notwithstanding the facts which are contained in the answer. So long as this condition is not disturbed, the trustees are entitled to control its affairs, and the appellants cannot escape the responsibility which the legislature has created for their defaults.

The phrase, "where the business of the company is carried on," which forms the corner stone of the decisions of the courts of the State of New York, *supra*, is found in several sections of the chapter concerning corporations. The certificate of incorporation shall state "the county in which the operations of said company shall be carried on." (§ 446.) "Any certificate . . . . may designate one or more places where the company may carry on their business in the Territory of Montana." (§ 448.) Another certificate shall be recorded in the county "wherein the

business of said company is carried on." (§ 459.) Provision is made for the removal of the principal place of business into some other county. (§ 490.) In *Ex parte Schollenberger*, 96 U. S. 377, Mr. Chief Justice Waite says: "A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter." The last sentence of the section under consideration specifies "the county in which the business of the said company is carried on, as declared in its certificate of incorporation." This construction, which has been given by the legislature, applies to these expressions, which refer to the "legal home" of the corporation.

When corporations are dissolved in any of the modes which have been pointed out, the evidence will consist of records which are open to public inspection, and no creditor or shareholder can be injured through ignorance of their financial standing. But if testimony is essential to prove abandonment, or any fact that is a matter of intention in the mind of the trustees, or any other persons, the difficulties in the path of the holders of accounts against corporations in default are increased. Proof of the neglect of the trustees to publish or file the annual reports in September can be easily overcome by the statements of the culpable parties that they had abandoned the enterprise in August of the same year. Uncertainty of this degree can be prevented by a rigid adherence to these views. The benefits of the statute regulating corporations are inseparable from the penalties which are prescribed, and all officers who undertake the performance of its obligations will be compelled to render obedience.

The judgment is affirmed, with costs.

HARWOOD, J., and DE WITT, J., concur.