(112 App. Div. 680)

### COSTELLO et al. v. OUTTERSON et al.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

CORPORATIONS—LIABILITY OF TRUSTEES—FAILURE TO FILE ANNUAL REPORT.

    The trustees of a manufacturing corporation are not liable for failure to file the annual report required by section 30 of the stock corporation law (Laws 1892, p. 1832, c. 688), where all its movable property had been sold on execution, and thereafter no further help was employed, labor done, or business carried on at the factory, no stock or material was purchased, and the company had no money with which to purchase stock or material, no meetings of the directors were held, and there was no intention to resume business.

    [Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1462.]

Appeal from Trial Term, Jefferson County.

Action by Thomas M. Costello and another against Charles E. Outterson and others. From a judgment for plaintiffs, defendants appeal. Reversed, and new trial ordered, with costs.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

  Henry Burcell, for appellants.
  Joseph Atwell, for respondents.

NASH, J. This action was brought to recover an indebtedness of the Columbian Box Company to the plaintiff because of the failure of the defendants, who were trustees of the corporation, to make and file, as provided by statute, the annual report of the company during the month of January, 1895. The company was organized as a corporation under the business corporations law for the manufacture and sale of fancy boxes, with a capital of $10,000. Its principal office was at Brownville, N. Y. Its capital stock was fully paid in in cash prior to October 5, 1893. Annual reports were filed in 1893 and 1894. The last was on the 31st day of January, 1894. The defendants were elected trustees in January, 1894. In addition to the recovery of the judgments by the plaintiffs, judgments amounting to $1,850.45 were recovered against the corporation in the months of July and August, 1894, upon which executions were issued to the sheriff of Jefferson county and returned unsatisfied, except as to sums amounting to less than $100. On August 7, 1893, the corporation placed a mortgage upon its plant and real property for $6,000, to secure bonds issued thereon, and bonds to that amount were issued, upon which default in the payment of interest occurred in December, 1894, at which time an action was commenced to foreclose the mortgage. The action pro-

ceeded to judgment on the 26th of January, 1895, and to a sale on the 16th of March, 1895. The mortgage covered the entire real estate of the company, and a deficiency judgment arose upon foreclosure of the mortgage for $4,588.46, which was docketed in the Jefferson county clerk's office June 29, 1895. A receiver of the corporation was appointed June 1, 1895. The defendants upon the trial gave proof, which was not in any manner controverted, to the effect that all of the movable property of the company was sold prior to August, 1894, on executions upon the judgments recovered against the corporation; that after the sale on execution no further help was employed, labor done, or business carried on at the factory, and the business was not at any time thereafter resumed. No stock or material was purchased by the company after the sales on execution, and the company had no money or means to make purchases of stock or material with which to conduct its business. The company had a boiler and engine, which had been purchased conditionally of the Watertown Steam Engine Company, which was removed by that company in the summer or fall of 1894. That after this property was removed there was no power with which to turn the machinery. After the sales of the movable property on executions, no meeting of the directors of the company was held, the corporation had no property or means of resuming business, and there was no intention on the part of the company, or any of its trustees, to resume business after August, 1894.

The contention of the appellants is that section 30 of the stock corporation law (Laws 1892, p. 1832, c. 688), relative to the filing of annual reports, which was in force in the year 1895, and since repealed, never was intended to apply, and did not apply, to a corporation where all of its property had been seised on execution and sold, where it had become insolvent, had ceased doing business, had no ability to raise funds to carry on business, had been entirely abandoned by its incorporators, and there was no intention on its part, or on the part of its incorporators, to resume business; that under the facts proven the corporation was in fact dissolved, had become defunct, and could not be called upon by creditors to file an annual report. So far as the public was concerned, or those with whom it was doing business, inclusive of the plaintiffs, whose debt accrued March 22, 1894, it was just as effectually dead as if dissolved by legal procedure. The authorities were reviewed by Judge Danforth in his opinion in Bruce v. Platt, 80 N. Y. 379, and the decision of the court formulated thereon is as follows:

"Where it appeared that in December, 1874, the entire property of such a corporation was sold under execution; that before January 1, 1875, every person interested in it as a corporator had abandoned it; that it was carrying on no business, had no means of procuring money, and intended to do no further act in pursuance of the object of its incorporation—held, that the statute did not require the filing of a report for the year 1875; that for every practical purpose the corporation might be deemed to have been dissolved; and so that its obligation to file a report had ceased before the arrival of the time when the report was required."

The question was again before the court in Kirkland v. Kille, 99 N. Y. 390, 2 N. E. 36, where it was held that:

"When the condition of such a company is such that the end and object for which it was formed is destroyed, and there is neither ability nor in-

98 N.Y.S.—56

tention on its part at any time to further prosecute business, it is no longer required to make the report mentioned in section 12, c. 40, p. 57, of the general manufacturing act of 1848."

In the case of First National Bank v. Lamon, 130 N. Y. 366, 29 N. E. 321, cited by respondents' counsel, in which it was held that the trustees were not, under the circumstances, relieved from the duty of filing the report, Judge Brown, writing the opinion, said:

"This court has decided that on the appointment of a receiver of a manufacturing company the corporation is so far dissolved that thereafter the duty is no longer upon the trustees to make the report (Huguenot Bank v. Studwell, 74 N. Y. 621), and that when the corporation has been practically abandoned, the requirement as to filing reports does not apply to the trustees (Losee v. Bullard, 79 N. Y. 404; Bruce v. Platt, 80 N. Y. 379; Van Amburgh v. Baker, 81 N. Y. 46). In Losee v. Bullard the default was alleged to have been made in 1873, and it appeared that the corporation had suspended business in 1865, and had never resumed, and had contracted no debts during that time. In Bruce v. Platt the alleged default was in January, 1875, but more than a year previous all of the property of the corporation had been sold under execution, and from that time the corporation had no property or business, no means of procuring money, and no ability or intention of resuming business. The result of these cases is summed up by Judge Danforth in Kirkland v. Kille, 99 N. Y. 390–395, 2 N. E. 36, as follows: 'When the condition of the company is such that the end and object for which it was formed are destroyed, and there is neither an ability nor intention on its part at any time to further prosecute the business, it is no longer required to make the report mentioned in section 12 of the manufacturing act.' This case does not fall within the rules enunciated in any of the cases cited. The corporation was not in the hands of a receiver at the time of the default. Nor does the evidence show that it was insolvent, nor had its franchises been abandoned."

In Sanborn v. Lefferts, 58 N. Y. 179, it was held that:

"The fact that a manufacturing corporation, organized under the act authorizing the formation of manufacturing and other corporations (chapter 40, p. 54, Laws 1848), has ceased to do business and is engaged in closing up its affairs, is not an excuse for a failure to comply with the requirements of section 12, p. 57, of said act as to the filing of a report; and, in the absence of any legal dissolution of the company, these facts do not, nor does knowledge on the part of a creditor of the financial condition and embarrassments of the corporation, affect the liability of the trustees to him, imposed by that section for the failure to file a report."

Sanborn v. Lefferts is distinguished in Losee v. Bullard, 79 N. Y. 408, and Bruce v. Platt, 80 N. Y. 389. In the latter case Judge Danforth said it was not an exception to the rule there applied, and in Losee v. Bullard, Judge Rapallo said:

"In Sanborn v. Lefferts the corporation had not at the time of the default even suspended its ordinary business for one year. The defendant held over and acted as trustee until after the time of the annual statement should have been filed."

In Horrocks Desk Co. v. Fangel, 71 App. Div. 313, 75 N. Y. Supp. 967, the rule contended for by the appellant is specifically recognized. The headnote reads:

"The directors of a corporation are not relieved from the liability imposed upon them by section 30 of the stock corporation law for a failure to file an annual report of the corporation, as required by that section, by the fact that, prior to the time when the default in filing the annual report occurred, the corporation had made a general assignment for the benefit of creditors,

and did not carry on any business or exercise any of its corporate franchises thereafter. Semble, that in order to relieve the directors of a corporation from the duty of filing an annual report, it must appear that the corporation is insolvent, that it had ceased to exist by dissolution, or, as a matter of fact, from a total abandonment of its business, and its being placed in such a position that it does not intend to and cannot continue or resume operations under its franchise."

In Matty v. Sampson, 64 App. Div. 1, 71 N. Y. Supp. 731, where it was held that the fact that a corporation does no business for several years does not relieve the directors from the necessity of filing annual reports in those years, the defendants had become directors, and continued in office as such down to the time of the trial, and no report had ever been filed by them as directors. In Stevenson v. Cowan, 84 App. Div. 135, 82 N. Y. Supp. 78, it was held that:

"The abandonment of the company's business was merely temporary, and that the directors of the corporation were not relieved from the consequences of the failure of the corporation to file annual reports during those years."

In that case Judge Chase said:

"Merely ceasing to do business does not relieve directors from filing an annual report. While a technical dissolution of the company is not necessary to relieve directors from the consequences of not filing an annual report, the abandonment of the business and its franchises must be certain and final, and such as to put the company beyond the possibility of resuming business."

This means, as indicated by the qualifying words used, that the abandonment of the business and franchise which will relieve the directors from filing an annual report occurs when the corporation is entirely without property or means of continuing or resuming its business, and there is no intention of so doing. The doctrine and the reasons for the rule, which has since been followed, were stated by Spencer, C. J., in Slee v. Bloom, 19 Johns. 456, 10 Am. Dec. 273, as follows:

"In point of good sense, this corporation was dissolved, within the meaning and intent of the act as regards creditors, when it ceased to own any property, real or personal, and when it ceased for such space of time from doing any one act manifesting an intention of resuming their corporate functions. The end, being, and design of the corporation were completely determined, and if even it had the capacity to reorganize and reinvigorate itself, the case has happened when, as relates to its credits, it is dissolved."

The judgment should be reversed.

Judgment reversed, and new trial ordered, with costs to the appellants to abide the event. All concur.