EDWARD J. KELSEY, RESPONDENT, *v.* THE PFAUDLER PROCESS FERMENTATION COMPANY, APPELLANT.

*Corporation — what acts do not show that it has suspended its ordinary business for a year, so as to authorize the entry of a judgment declaring it dissolved.*

Upon an appeal from a judgment declaring the defendant corporation dissolved, upon the ground that it had suspended its ordinary and lawful business for at least one year prior to the commencement of the action, it appeared that the defendant was incorporated in April, 1882, under the general manufacturing act, to manufacture, use, license and sell machines and apparatus, and the process in which the same are used in the manufacture of beer and other fermentable liquids, under and by virtue of certain letters patent of the United States specified in the certificate; that, after entering upon this business, it encountered a competing company, claiming to own the same invention, which company, in order to test the rival claims, brought an action for an infringement against a licensee of the defendant; the defense of this action was assumed by the defendant.

While this action was pending an agreement was entered into between the two companies, providing that the party who should succeed in the litigation should have three-fourths and the other party one-fourth of the invention; that all the patents of both companies should be placed in a new corporation to be formed for that purpose, each party reserving its right as to licenses theretofore granted; that all future business should be divided between them, the successful party to have three-quarters and the defeated party one-quarter of the proceeds; that the new corporation should have five directors, two of whom might be selected by the minority.

The defendant having succeeded a new company was formed, to which all the patents were assigned as provided in the agreement, the stock of which was assigned to the two companies in the proportion therein mentioned, the president of the defendant being authorized and directed by its board of trustees to vote on the stock of the new company owned by it.

*Held*, that as it appeared that the defendant had kept up its organization, and its officers had continued to discharge their duties and the corporation had continued to receive royalties, issue licenses and prosecute and defend actions to which it was a party, the court erred in finding that it had suspended its ordinary and lawful business.

That if the act of the defendant in assigning the patents owned by it to the new corporation and taking the stock of such new corporation was unlawful and unauthorized, it would not entitle the plaintiff, a stockholder of the defendant, to maintain this action, as the action to be brought in such a case is required by the statute to be brought by the attorney general.

IN this action, brought by a stockholder of the defendant corporation to obtain a judgment dissolving it, there were four appeals :

*First.* Appeal from a judgment entered upon a decision of the Monroe Special Term declaring the defendant corporation dissolved.

*Second.* Appeal from a Special Term order convicting the defendant's attorney, John Van Voorhis, and its secretary, Edward G. Miner, of a contempt.

*Third.* Appeal from a Special Term order vacating an order made at chambers, staying proceedings pending an appeal from the judgment herein.

*Fourth.* Appeal from a Special Term order denying a motion for a stay of proceedings pending an appeal from said judgment.

There is also an original motion on the part of the respondent to dismiss said appeals, one, three and four, and also an appeal from a judgment in another action between the same parties, to recover a penalty.

*J. Van Voorhis* and *E. A. Nash,* for the appellant.

*Theodore Bacon* and *J. N. Beckley,* for the respondent.

SMITH, P. J. :

The judgment of dissolution was put upon the ground that the corporation had suspended its ordinary and lawful business for at least one year prior to the commencement of the action. The corporation was formed in April, 1882, under the general manufacturing act of 1848. The objects of its formation, declared in the certificate of its incorporation, were the manufacturing, using, licensing and selling machines and apparatus, and the process in which the same are used in the manufacture of beer and other fermentable liquids, under and by virtue of certain letters-patent of the United States, specified in the certificate. The certificate stated that the capital stock of the corporation was to be $100,000, in 1,000 shares of $100 each ; that the term of existence of the corporation should be fifteen years from the 15th of April, 1882 ; that its trustees should be seven in number, and its principal place of business should be in the city of Rochester. The plaintiff was and is one of its stockholders.

After the corporation entered upon the business for which it

was formed it encountered a competing company called "The New Process Fermentation Company," of Chicago, claiming as its own the same invention upon which the defendant relied. To test the question growing out of the rival claims, the "New Process" company brought suit against a licensee of the "Pfaudler Process" company for an infringement, and the latter company assumed its defense. While that suit was pending undecided the two companies entered into an arrangement for the purpose of composing their differences, the principal features of which were that the party which should succeed in the suit should have three-fourths and the other party one-fourth of the invention; that all the patents of both companies should be placed in a third party or new corporation to be formed for that purpose, each party reserving its rights as to licenses theretofore granted, or contracts in process of execution; that the two companies should pool all future business and divide its proceeds, the successful party to have seventy-five per cent and the defeated party the remainder; that all suits then pending should be prosecuted for the benefit of the party commencing the same, and all future suits for the benefit of the pool; that there should be five directors of the new corporation, two of whom might be selected by the minority interest; and that the new corporation should furnish to each of the contracting parties, each month, a statement of the business done during the month, and remit to each its proportion of the net profits received during the month.

The suit between the companies was decided in favor of the defendant herein, and thereupon, for the purpose of carrying out the said agreement, a new company was organized under the said act of 1848, called the "Consolidated Bunging Apparatus Company," to which the contracting parties assigned their respective patents. The certificate of incorporation of the new company bears date 18th July, 1884, and was signed by three persons, each of whom was a stockholder and trustee of the defendant. The objects of the new corporation stated in the certificate were the purchasing and leasing of letters-patent and of inventions for improvements in the process and apparatus for manufacturing and preparing beer, wine and other fermented liquors for the market; the manufacturing, selling, licensing and operating of such process and apparatus under said letters-patent and of inventions used for like purposes,

and the transaction of all business incidental to or connected therewith. The amount of the capital stock of the new company was $100,000, consisting of 1,000 shares; the number of trustees was fixed at five; the term of existence of the company was to be twenty-five years, and its principal office and place of business was to be in the city of Rochester. Seven hundred and fifty shares of the stock were assigned to the defendant, and the remainder to the Chicago company. The president of the defendant was authorized and directed by its board of trustees to vote upon the stock of the new company owned by the defendant, in all meetings of that company, as he should deem best for the interests of the defendant and its business, and a board of five trustees of the new company was designated, three of whom were trustees of the defendant, and the other two represented the Chicago company.

Evidence of the action of the defendant's officers in effecting this arrangement, of the motives which induced it, and of the purposes sought to be accomplished by it, is furnished by the resolutions of the board of trustees and the reports of committees and other information upon which they acted, set out in the printed case. So far as we can gather from the testimony, it seems obvious that the trustees at no time intended an abandonment or suspension of the business for which the defendant was organized; on the contrary, the arrangement made, including the transfer of the patents to the new company, was entered into by them for the purpose of removing the formidable competition of the Chicago company which threatened them with disaster, and in the expectation of being able, by their control of the new company, to prosecute the business for which they were organized, with greater vigor and success. These views, as to the favorable effect of the arrangement upon the business of the defendant and the value of its stock, find support in the averments contained in the complaint verified by the plaintiff herein, in an action brought by him and others against the defendant herein and others in February, 1884, and in the findings of the referee in that action, all of which appear in the appeal book before us. The arrangement seems to have been the same, in practical effect (so far as future business was concerned), as it would have been if the defendant had taken an assignment of the patents held by the Chicago company, giving that company in exchange for them, one-

fourth of the capital stock of the defendant and the right to choose a minority of its board of trustees. If the arrangement had taken that form, it will hardly be contended that it would have amounted to an abandonment or suspension of the business of the defendant. The present arrangement provides for a continuance of the business for which the defendant was organized, and for its control by the defendant through its ownership of three-fourths of the stock of the new corporation. So that if the arrangement is one which the defendant had power to make and is not illegal, it is difficult to see how it works an abandonment or suspension of the business for which the defendant was formed.

It may be, however, that the defendant, in parting with its patents, and taking stock in the new company, exceeded its powers, or acted illegally  Assuming for the further consideration of the matter without deciding, that such was the case, how is the plaintiff aided thereby in this action? For an unlawful alienation of the property of a corporation by its officers, where the alienee knew its purpose (as must have been the case here), the statute provides a remedy by action against the officers chargeable with the wrong to set aside the alienation, the action must be brought by the attorney-general, and the alienee, doubtless, must be made a party. (Code Civil Pro , § 1781, sub 5, § 1782.)  And if the taking of stock in the new corporation by the defendant was an excess of power, it can hardly be said that the circumstance is available to the plaintiff in this action, for the sole ground on which he seeks relief is, not that the defendant has exceeded, but that it has abandoned the powers given by its charter  In fine, so long as the State does not interfere, and the parties to the contract treat it as valid, it is hard to see that the plaintiff has any cause of complaint, on account of the method which the defendant has adopted for carrying on the business contemplated by its charter, especially as that method was intended to promote the interests of all the stockholders, and for aught that appears has had that effect.

So far as we are advised, the case is without precedent. The authorities cited by the respondent's counsel differ widely from the present action. In *Ward* v. *The Sea Insurance Company* (7 Paige, 294), the business of the corporation, which was that of marine insurance, was suspended for more than a year, under a

formal resolution to that effects by the board of directors, and the management of its estate and effects was committed, as the report of the case states, to the president and secretary, aided by three of the directors. From this it is to be inferred that the board of directors had relinquished control. In the case of the *Jackson Marine Insurance Company* (4 Sandf. Ch. R., 559), the corporation resolved to cease its business, to cancel its outstanding policies, and to liquidate all liabilities, and for more than a year had done no new business except to fulfill stipulations in then existing policies. In *Briggs* v. *Penniman* (8 Cow., 386), it was held that a manufacturing corporation which had ceased to act, was without funds and was in debt, was dissolved, within the intent of the statute, so far as to give a remedy to creditors against the individual stockholders, and that that result was not prevented by an election of trustees made apparently for no purpose but to keep the company in existence. In *The People* v. *The Northern Central Railroad Company* (53 Barb., 98), the defendant was insolvent thirteen years before suit, and then surrendered its property to its creditors, and ever thereafter had remained insolvent, and neglected to pay its notes and other evidences of debt, and entirely suspended its ordinary business, and another corporation with the same general object had, under the authority of the State, organized and was in actual operation in its stead.

If most, if not all or the cases upon the subject reported in the books, there was evidence of an actual abandonment of the business of the corporation, or of a suspension for more than a year, with no effort whatever to carry it on, and no intention to resume, accompanied generally by insolvency or pecuniary embarrassment.

In this case, there is no finding of insolvency. In the action already mentioned, brought by this plaintiff and others against this defendant and others, it was found by the referee that the assets of the defendant were valuable and that they largely exceeded its indebtedness. As has been said the decision of the Special Term rests upon the single fact that the defendant parted with the title to its patents, in the circumstances above stated. As we think it manifest from the evidence that it did so, not with the intention of abandoning or suspending the business for which it was formed, but for the purpose of relieving itself from ruinous competition and litigation,

and of having the business prosecuted with more beneficial results to its stockholders, under its own control, and such business has continued to be prosecuted in the mode contemplated, we are not prepared to concur in the conclusion that the corporation was thereby dissolved.

The defendant corporation has kept up its organization. It has continued its board of trustees, president and other officers. Its omission to elect trustees in some years is not a reason for dissolving it. The acts of its trustees are valid till their successors are elected. (Laws of 1848, chap 40, § 4). In accordance with its agreement with the Chicago company, it has received royalties upon licenses issued by it prior to the agreement, has issued licenses to the licensees of that company; and has prosecuted or defended actions at law in which it is a party, much of which has been done within the year next preceding the commencement of this action. If these things were done merely for the purpose of closing its prior engagements and winding up its affairs, they would not prevent its dissolution in case it had, in fact, abandoned its business, but in the circumstances, they tend to show that it is continuing its business under its agreement with the rival company

One of the actions which the company is defending was brought against it by the plaintiff herein, to recover a penalty for refusing to exhibit the stock-book of the company to the plaintiff. That action was brought within the year next preceding the commencement of this suit. The complaint alleged that the refusal to exhibit the book occurred at a date which is within the same period. It also alleged the existence of the defendant as a corporation, at that time, the fact that it then had an office and place of business and trustees whose duty it was to cause the stock book to be kept open for inspection by the defendant's stockholders. The complaint was verified by the plaintiff. There may be a question whether the plaintiff is not estopped thereby from alleging that the defendant had then suspended its business. (*Bradt* v. *Benedict*, 17 N. Y., 93, *per* PRATT, J, 100) It would seem that if this action can be maintained, the obligation of the defendant to exhibit the book had ceased by reason of its suspension. (*Bruce* v *Platt*, 80 N. Y., 379.)

It appears by the appeal book that at the time when the written assignment to the new company was executed, the letters-patent were held by a receiver, to whom they had been transferred by the

defendant by an order of the court; but as they were afterwards retransferred by the receiver to the defendant, under a like order, we do not think that this case is affected by the circumstance that the patents were in the receiver's hands when the assignment was executed. We are of the opinion that the judgment should be reversed and a new trial ordered, costs to abide event.

The reversal of the judgment removes the foundation on which the three orders appealed from rested. They grew ont of proceedings on the part of the receiver appointed by that judgment to get possession of the property of the defendant, and of the action of the officers or agents of the corporation in opposing such efforts. The orders must fall with the judgment, but as the proceedings on the part of the plaintiff and of the receiver were apparently justified by the judgment, the reversal of the several orders should be without costs to either party.

The motion to dismiss the appeal has not been overlooked. It appears to be based upon the idea that the defendant corporation, having been adjudged to be dissolved, has no existence and cannot appeal. Every party litigant has the right to appeal from a judgment by which he is aggrieved. (Code Civil Pro., § 1294.) A corporation aggrieved by a judgment declaring it to be dissolved, is no exception to the rule. Having the right to appeal from the judgment, it may also appeal from an order based upon the judgment, or growing out of proceedings taken to enforce or execute it.

The motion is denied, without costs.

HAIGHT and BRADLEY, JJ, concurred.

Judgment reversed and new trial ordered, costs to abide event; orders appealed from reversed, without costs, and motions to dismiss appeals denied, without costs.